**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-3196 and 11-3197
_____

UNITED STATES OF AMERICA

v.

CHARLES F. MURRAY,
                    Appellant
_____

On Appeal from the District Court
for the Western District of Pennsylvania
(Nos. 2-11-cr-00051 and 2-11-cr- 00052)
District Judge: Honorable Gary L. Lancaster
_____

Argued on March 27, 2012

Before: FUENTES, SMITH and JORDAN, *Circuit
Judges*

(Opinion Filed: September 5, 2012)


Lisa B. Freeland
Kimberly R. Brunson          **(ARGUED)**

Federal Defenders of the Western District of
Pennsylvania
1500 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222

*Attorneys for Appellant Charles F. Murray*

Rebecca R. Haywood            **(ARGUED)**
Craig W. Haller
Unites States Attorney's Office for the Western
District of Pennsylvania
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

*Attorneys for the United States of America*

---

OPINION OF THE COURT

---

FUENTES, *Circuit Judge*:

In 2004 in the District of New Jersey, Charles Murray pleaded guilty to traveling interstate to engage in illicit sexual conduct with a minor. Later that same year, in a separate case in the Eastern District of Pennsylvania, he pleaded guilty to possession of child pornography. For these offenses, he was sentenced to an aggregate term of 95 months' imprisonment, to be followed by concurrent three-year terms of supervised release. Both of Murray's sentencing judges imposed upon him various special conditions of supervised release that, for example, require him to register as a sex offender and to submit to unannounced searches of his computer.

After Murray was released from prison in July 2010, he moved to the Western District of Pennsylvania. That District thus assumed jurisdiction over him for the remainder of his term of supervised release. Though Murray had not violated his existing supervised release conditions, the Probation Office sought to modify them to bring them in line with the conditions of release that are typically used in the Western District. Some of the Probation Office's proposed conditions were duplicative of those already mandated by the Eastern District of Pennsylvania and District of New Jersey, but others were new. The District Court granted the Probation Office's request and imposed several new, more stringent conditions on Murray. Murray now appeals. For the reasons that follow, we will remand this case to the District Court.

## I.

### A.

In the spring of 2003, Murray made contact online with a 14 year-old boy and the two communicated via phone and instant message for several months. On two occasions in May 2003, Murray crossed state lines, picked up the boy, and took him to a private parking lot where they engaged in sexual acts. Although Murray insisted that the sex was consensual, the boy reported that he believed he did not have a choice. Thus, on April 1, 2004, Murray pleaded guilty to two counts of traveling in interstate commerce to engage in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b). The District Court for the District of New Jersey sentenced him to a term of 83 months' imprisonment for each count, to be served concurrently, followed by a three-year term of supervised release. Along with the standard conditions of

3

supervised release, the District Court imposed some additional conditions.[1]

In July 2003, during the course of their investigation of the New Jersey case, federal officers executed a search warrant at Murray's Pennsylvania residence. The officers seized computer equipment, and found approximately 184 images of child pornography. Thus, on November 5, 2004 in the Eastern District of Pennsylvania, Murray pleaded guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The District Court sentenced Murray to 40 months' imprisonment, with 28 months to run concurrently to his New Jersey sentence and 12 months to run consecutively. In addition, it imposed a three-year term of supervised release, to run concurrently with the term of supervision imposed by the District of New Jersey. The Pennsylvania District Court also imposed some special conditions of supervised release.[2]

---

[1] These included requirements that Murray: 1) register with the state sex offender registration agency in any state where he resides, is employed, etc.; 2) cooperate in the collection of his DNA; 3) not obtain employment or perform volunteer work which includes contact with minor children; 4) not possess child pornography; 5) allow his probation officer the right of reasonable search of his residence or any other establishment within his control; 6) submit to unannounced searches of his computer equipment; and 7) advise the Probation Office of any computers to which he has access, and agree not to use others' computers unless the owners have consented to have them monitored.

[2] These included requirements that Murray: 1) participate in a mental health treatment program, which may include urine testing, at the direction and discretion of the probation officer; 2) cooperate in the collection of his DNA; and 3) have restricted computer use,

4

**B.**

On July 2, 2010, Murray was released from prison and began his term of supervised release.[3] Murray relocated to a small city near Pittsburgh, Pennsylvania, and in August and September 2010, jurisdiction over him for the remainder of his supervised release terms was transferred to the Western District of Pennsylvania. Though Murray had not violated or otherwise failed to comply with any of his existing supervised release conditions, the Probation Office for the Western District of Pennsylvania sought to modify those conditions "to reflect the language approved by the Court in the Western District of Pennsylvania relative to individuals convicted of similar offenses." App. 58. Some of the requested conditions were duplicative of those already mandated by the Eastern District of Pennsylvania and the District of New Jersey, but others were new. Among the Probation Office's proposed conditions were requirements that Murray:

---

monitored contact with minors, and counseling as directed by the probation officer.

[3] Murray was arrested and detained on July 25, 2003, and there is no indication that he was ever released on bail. While our record is not clear on this point, it seems that it was a combination of credit for the time he served prior to his sentencing, along with good time credit, that permitted Murray's release on July 2, 2010, approximately 7 years later. *See* 18 U.S.C. § 3624(b)(1) ("[A] prisoner who is serving a term of imprisonment of more than 1 year . . . may receive credit toward the service of the prisoner's sentence, beyond time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment . . . [if] the prisoner has displayed exemplary compliance with institutional disciplinary regulations.").

1) participate in a mental health and/or sex offender treatment program and submit to polygraph testing to determine if he is in compliance with the conditions of his release;

2) register as a sex offender;

3) not possess any material depicting or describing sexually explicit conduct;

4) not possess any material depicting or describing child pornography;

5) consent to the installation of computer monitoring hardware/software to monitor any computer or electronic device he may use, and pay for the cost of this monitoring;

6) consent to the seizure and removal of any hardware or data storage media he might possess for further analysis by the Probation Officer upon reasonable suspicion that he committed an unlawful act or violated his conditions of supervised release;

7) notify his employer of the nature of his conviction if he is going to use a computer at work;

8) provide the Probation Officer with information, including passwords, about any and all computers and other electronic devices to which he has access; and

9) submit his person, property, house, residence, vehicle, papers, and business or place of employment to a search upon reasonable suspicion of contraband or a violation of a condition of supervision.

On March 29, 2011, the Probation Office submitted a Supplemental Petition requesting leave to incorporate additional language, which it had inadvertently omitted, into one of the proposed conditions. Specifically, the Probation Office expanded upon Proposed Condition Five to add a requirement that Murray

submit any of his computers, cell phones, or other electronic devices to periodic, unannounced examinations by his Probation Officer.

Murray filed a brief in opposition to these modifications. He argued, among other things, that his conditions of supervised release should not be changed because he had not violated his existing release conditions, and he emphasized that the Probation Office had not explained why the existing conditions were insufficient to serve the purposes of sentencing. The Probation Office then filed Second Supplemental Petitions in both cases, in which it stated that it had "inadvertently included [in the previous petitions] conditions of supervision that would not be appropriate in this case." App. 104. The Probation Office thus retracted proposed Conditions One (mental health treatment and polygraph testing), Two (sex offender registration), Three (possession of sexually explicit material), and Four (possession of material depicting child pornography) without describing why they were inappropriate.

A hearing was held before the District Court on May 25, 2011. The District Court ultimately issued an Opinion and Order that granted the Petition on Supervised Release and the Supplemental Petition and directed that Murray's conditions of supervised release be modified to impose all nine proposed conditions. The Court did not explain why it was mandating the imposition of those conditions that the Probation Office had since retracted, and it found that it could modify Murray's conditions of supervised release regardless of whether "new or unforeseen" circumstances had arisen. The Court also held, in the alternative, that if changed circumstances were required, the transfer of jurisdiction over Murray's case to the Western District of Pennsylvania was sufficient. The District Court noted that it had considered the relevant § 3553(a) factors and concluded that the

7

requested conditions involved no greater deprivation of liberty than was reasonably necessary to achieve the goals of sentencing.

Murray filed a Motion for Reconsideration, in which he emphasized that the Probation Office had since retracted the first four proposed conditions. The District Court denied this motion, but also stated that it was amending its prior Order "to include the granting of the Second Supplemental Petitions on Supervised Release." App. 12. Unfortunately, the import of this statement is unclear. Arguably, by granting the Second Supplemental Petitions, the Court could be said to have vacated the first four proposed conditions. As a practical matter, however, Murray's counsel represented to this Court at oral argument that Murray has been subject to at least Condition One, relating to polygraph testing. Thus, we will assume for the purposes of this opinion that the District Court never retracted the first four conditions.

Murray timely appealed from both District Court Orders.

## II.

Murray's case was transferred to the Western District of Pennsylvania for oversight of his supervised release. Thus, the District Court had jurisdiction pursuant to 18 U.S.C. § 3605 (transfer of jurisdiction over a releasee) and 18 U.S.C. § 3583(e) (modification of supervised release conditions). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## III.

Generally, we "review challenges to the imposition of a special condition of supervised release, as well as a district court's decision to modify the terms of release, for abuse of discretion."

8

*United States v. Smith*, 445 F.3d 713, 716 (3d Cir. 2006); *see also United States v. Miller*, 594 F.3d 172, 183 n.6 (3d Cir. 2010).

## A.

18 U.S.C. § 3583(e)(2) provides that a court may, after considering the factors set forth in 18 U.S.C. § 3553(a),

modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provision of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision.

The relevant Federal Rule of Criminal Procedure, Rule 32.1(c), further provides that an individual's supervised release conditions may not be modified unless the court holds a hearing and allows him to attend with counsel and make arguments in favor of mitigation.[4] The Advisory Committee Notes to Rule 32.1(b) add that, "[p]robation conditions should be subject to modification, for the sentencing court must be able to respond to changes in the probationer's circumstances as well as new ideas and methods of rehabilitation."

## B.

Murray argues that, because it is undisputed that he did not violate his original conditions of supervised release, the District Court was required to find that new or unforeseen circumstances had

---

[4] A hearing is not required if the individual waives it or if the relief sought is favorable to the individual and the government does not object. Fed. R. Crim. P. 32.1(c)(2).

arisen that justified the modification. He says that the District Court's decision to the contrary "is inconsistent with," among other things, "the fundamental principle of finality in the federal criminal justice system" and the Advisory Committee notes to Rule 32.1, which make reference to changes in the releasee's circumstances. Appellant's Br. 28. The Government responds that "numerous cases have rejected the proposition that 'changed circumstances' are a prerequisite to modifying a defendant's terms of supervised release." Appellee's Br. 20. In the alternative, the Government argues that "Murray's 'transfer of jurisdiction' was a sufficient 'changed circumstance' to warrant the modifications of [his] release terms." *Id.*

It is an open question in our Circuit whether a district court must find new or unforeseen circumstances before it may modify a person's conditions of supervised release. *See United States v. Garrasteguy*, 559 F.3d 34, 43 n.12 (1st Cir. 2009) (describing *United States v. Smith*, 445 F.3d 713 (3d Cir. 2006), as having left open the question of whether "significantly changed or extraordinary circumstances are [a] prerequisite to modification"). Indeed, there appears to be a split among our sister circuits on this issue. *Compare United States v. Miller*, 205 F.3d 1098, 1101 (9th Cir. 2000) (holding that "Miller [had] allege[d] a type of changed circumstance that, if true, may justify judicial modification of a defendant's supervised release."), *and United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997) ("Section 3583(e) provides the district court with retained authority to . . . modify terms and conditions of supervised release . . . in order to account for new or unforeseen circumstances."), *with United States v. Begay*, 631 F.3d 1168, 1170-71 (10th Cir. 2011) ("Although Begay asks us . . . to limit the district court's authority to modify special conditions of supervised release to only those cases where the government can show a change in circumstances, we refuse to impose that limitation on the district

10

court's authority."), *and United States v. Davies*, 380 F.3d 329, 332 (8th Cir. 2004) ("A district court may modify the conditions imposed on a term of supervised release even when . . . the modification is based only on evidence that was available at the original sentencing. This is because the statute that authorizes district courts to modify the conditions of supervised release does not require new evidence, nor even changed circumstances in the defendant's life.").

There is a risk, however, of overstating the degree to which our sister circuits are actually in conflict. Neither the Ninth nor the Second Circuit has gone so far as to describe a showing of new or unforeseen circumstances as necessary or as a prerequisite to modification. Thus, we might say that these courts have merely described conditions that are sufficient, but not necessary, to justify modification. Notably, the Second and Ninth Circuits were writing in response to petitions by individual releasees who wished to see their conditions of supervised release reduced, while the Eighth and Tenth Circuits were responding to petitions by the Government. It may be that courts are particularly wary of giving releasees another avenue to challenge their sentences, and have thus required them to make a threshold showing of new or unforeseen circumstances. At the same time, nothing in the statutory scheme suggests that it should be easier for the Government to make release terms more stringent than it is for the individual to receive mitigation. Thus, whatever rule is promulgated will apply equally to the Government and individual defendants.

We note that the statute that permits modification of supervised release terms, 18 U.S.C. § 3583(e)(2), makes no mention of any new or changed circumstances requirement—an omission which leads us to doubt that such a requirement exists. Nevertheless, we need not resolve this circuit split today. Even assuming that a threshold showing of changed circumstances is

11

required, the Government has met its burden. Specifically, as a matter of plain language interpretation, Murray's move to a new jurisdiction constituted a "new circumstance." This change permitted the District Court to consider the Government's petition for modification of Murray's release conditions. Although Murray insists that his move was not a "changed circumstance[] specific to [him] which affect[s] general punishment aims such as deterrence or rehabilitation," we disagree. Appellant's Br. 42-43. When a releasee moves to a new area, various sentencing factors might be implicated. For example, the conditions of supervised release imposed by the sentencing court must reflect the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). If a district court sets as a condition of supervised release the requirement that an individual must attend a specialized mental health program for sex offenders, and that individual then moves to a rural area where no such program is offered, the court might reasonably respond by modifying the releasee's conditions to reflect the rehabilitation programs that are available. Whether Murray's move necessitated similar adjustments to his release conditions was a question that the District Court properly considered.

We therefore turn to the question of whether the particular modifications that were imposed in this case were appropriate.

## C.

18 U.S.C. § 3583(d) authorizes a sentencing court to impose a condition of supervised release "to the extent that such condition— (1) is reasonably related to the factors set forth in [18 U.S.C. § 3553(a)]; [and] (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section [3553(a)]."

18 U.S.C. § 3583(d)(1) & (2). The specific 3553(a) factors that must be considered are: "the nature of a defendant's offense and the defendant's history and characteristics; the need for adequate deterrence; the need to protect the public from further crimes of the defendant; and the need to provide the defendant with correctional treatment including vocational training or medical care." *United States v. Miller*, 594 F.3d 172, 183 (3d Cir. 2010). "Notably, in addition to the sentencing goals enumerated, § 3553(a) also requires parsimony—that '[t]he court impose a sentence sufficient, but not greater than necessary.'" *United States v. Albertson*, 645 F.3d 191, 197 (3d Cir. 2011).

"[W]e review the reasonableness of a supervised release term against the § 3553(a) factors, recognizing that the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." *Albertson*, 645 F.3d at 197 (internal quotation marks omitted). "Congress intended supervised release to assist individuals in their transition to community life." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Thus, "supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Id.* Importantly, "[s]upervised release . . . is not punishment in lieu of incarceration," *United States v. Granderson*, 511 U.S. 39, 50 (1994), but rather is primarily concerned with "facilitat[ing] the reintegration of the defendant into the community." *United States v. Vallejo*, 69 F.3d 992, 994 (9th Cir. 1995). Indeed, it is notable that "the only [traditional sentencing] factor *not* relevant to a court's decision of whether to impose supervised release . . . is 'the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.'" U.S. Sentencing Comm'n, Federal Offenders Sentenced to Supervised Release 8-9 (2010) (quoting 18 U.S.C. § 3553(a)(2)(A)). This omission reinforces the idea that the primary purpose of supervised release is

to facilitate the reentry of offenders into their communities, rather than to inflict punishment. *See* S. Rep. No. 98-225, at 124 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3307 (explaining that the goal of supervised release is "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison . . . but still needs supervision and training programs after release").

"We have consistently required that district courts explain and justify conditions of supervised release." *Miller*, 594 F.3d at 184. "[I]t is . . . important that district courts provide courts of appeals with an explanation sufficient for us to see that the particular circumstances of the case have been given meaningful consideration within the parameters of § 3553(a)." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc) (internal quotation marks omitted). Nevertheless, we have held that "[a] sentencing court does not have to discuss and make findings as to each of the § 3553(a) factors if the *record* makes clear the court took the factors into account in sentencing." *Id.* at 568 (internal quotation marks omitted). Thus, if we find that a district court has failed to make clear why it imposed a particular condition of supervised release, we may proceed in one of two ways. Either we may remand to the district court for further explanation or we may affirm the condition "if we can ascertain any viable basis for the . . . restriction in the record . . . ." *Miller*, 594 F.3d at 184 (internal quotation marks omitted).

In the instant case, the District Court believed that "there [wa]s no meaningful difference between the proposed modifications

14

and the current conditions" of supervised release.[5] App. 8-9. Based on this misapprehension, it seemed to assume that little discussion of how the proposed supervised release conditions comported with the requirements of § 3553(a) was needed. Although it made the conclusory statement that, "after considering the factors set forth in § 3553(a) we find that the requested conditions involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in 18 U.S.C. § 3553(a), as provided in 18 U.S.C. § 3583(d)(2)," it did not enumerate the § 3553(a) factors or apply them to Murray's case. App. 9. In fact, the District Court's only reference to any specific sentencing factor was its comment that "the Probation Officer has not alleged that the existing conditions are insufficient to further the legitimate statutory goals of deterrence, protection of the public, and rehabilitation of the defendant." *Id.* at 5.

Indeed, the District Court justified the imposition of the new conditions largely on the ground that the changes would be "positive" for Murray. *Id.* at 9. This was the case, it said, because the "precision and comprehensiveness [of the new conditions] add[ed] clear guidance for Mr. Murray and for the Probation Officer tasked with enforcing the conditions." *Id.* While clarity is no doubt a virtue, it is not one of the sentencing factors enumerated in § 3553(a). Because the District Court offered no other explanation for its conclusion that the new conditions "involve[d] no greater

---

[5] Murray himself actually made somewhat the same argument in his brief to the District Court. *See* App. 134 ("[T]he Government has failed to identify any respect in which the conditions to which Mr. Murray is already subject differ in any meaningful way from the modification sought or how this has created any difficulty whatsoever with the supervision of Mr. Murray.").

15

deprivation [of liberty] than is reasonably necessary for the purposes set forth in section [3553(a)]," 18 U.S.C. § 3583(d)(2), our review of its opinion is made significantly more challenging.

While we may still affirm the District Court if we are able to ascertain a viable basis for the new conditions in the record, we are unable to do so on the facts before us. At the outset, we are unclear why the District Court elected to impose the four proposed supervised release conditions that the Probation Office had conceded were inappropriate in Murray's case. (In fact, as described above, it is possible that the District Court actually intended to vacate those conditions, but its Order was unclear in this regard.) Moreover, it seems that the prior conditions were successfully meeting the goals of § 3553(a) in that they were deterring Murray from committing additional crimes, providing him with needed mental health counseling, and protecting the public. Thus, to the extent that the District Court effectively made Murray's supervised release conditions more restrictive, some explanation of why this was necessary would have been helpful. For these reasons, we will vacate the Orders imposing the nine new conditions of supervised release, and remand this case to the District Court for further proceedings consistent with this opinion.

**D.**

We thus ask the District Court to more clearly explain why these new release conditions are no greater than necessary to satisfy the § 3553(a) sentencing factors. For example, if the District Court meant to leave Condition Three (possession of sexually explicit material) in place, despite the Probation Office's effort to have it

removed,[6] the Court should be aware that "there are First Amendment implications for a ban that extends to explicit material involving adults." *United States v. Voelker*, 489 F.3d 139, 151 (3d Cir. 2007). Hence our case law has "recognize[d] that a term of supervised release restricting access to adult sexually oriented materials must be 'narrowly tailored,' *i.e.*, that the restriction must result in a benefit to public safety." *United States v. Thielemann*, 575 F.3d 265, 273 n.15 (3d Cir. 2009) (citing *United States v. Loy*, 237 F.3d 251, 266 (3d Cir. 2001)); *see also United States v. Voelker*, 489 F.3d 139, 150 (3d Cir. 2007) ("Although 'the District Court could, perfectly consonant with the Constitution, restrict [an offender's] access to sexually oriented materials,' such a restriction must have a nexus to the goals of supervised release. We are unable to find any such nexus here, and the District Court's failure to explain its reasons makes our review all the more difficult." (quoting *Loy*, 237 F.3d at 267)). Thus, we must ask the District Court to provide an explanation for the imposition of Condition Three sufficient to show that it is narrowly tailored and related to the goals of supervised release.

As another example, Condition Nine (workplace searches), has elicited strenuous objection from Murray and warrants discussion by the District Court on remand. Condition Nine requires

---

[6] We have had some difficultly discerning the Government's position with respect to certain release conditions that are at issue in this case. While in its Second Supplemental Petition before the District Court, the Probation Office clearly stated that it wished to retract Conditions One through Four because they "would not be appropriate in this case," App. 104, at oral argument before this Court the Government stated that it would defend Conditions One, Two, and Four. Puzzling out the Government's arguments is a task we will leave for the District Court on remand.

Murray to "submit his . . . place of employment[] to a search, conducted by a United States probation/pretrial services officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of supervision." App. 59. It further states that Murray shall "inform any other residents that the premises may be subject to searches pursuant to this condition." *Id.* Murray notes that Condition Nine does not define "place of employment," nor is the prospective search limited to his personal workspace. He argues that this condition "will render [him] virtually unemployable as it is inconceivable that any employer would hire an employee knowing [that this] gives the government *carte blanche* to search the employer's place of business—be it a personal residence or a private office—without limitation." Appellant's Br. 53 n.5. We do not need to rule on these arguments at this juncture, but the District Court should address them, providing sufficient explanation of its decision to enable us to understand its rationale. If Condition Nine is to remain in place, the arguments Murray has made—which are not frivolous, even if they may not persuade the District Court— ought to be addressed in a manner that will permit appellate review.

## IV.

For the reasons described herein, we will remand the case to the District Court. On remand, the Court should carefully consider the 18 U.S.C. § 3553(a) factors and impose only those of the Government's requested supervised release conditions that involve no greater deprivation of liberty than is reasonably necessary to achieve the purposes set forth in section 3553(a). The Court should provide explanations for its conclusions, as appropriate.