McKEE, Chief Judge,
concurring.
I join the Majority Opinion in its entirety. For the reasons my colleagues explain, I agree that courts may consider a defendant’s actual conduct in order to properly classify a violation of supervised release as the District Court did here.[1] However, I write separately to emphasize that the inquiry underlying a sentence for violating the terms of supervised release is quite different from that required to determine the appropriate sentence for the commission of a crime. When the basis of a supervised release violation is the commission of a new crime, the supervising court should not impose a sentence to punish the defendant for that new offense. Punishment is best left to the judge who is assigned to handle the new criminal case. The judge whose supervised release is violated should instead ‘‘sanction the violator for failing to abide by the conditions of the court-ordered supervision,” U.S.S.G. ch. 7, pt. A3(b),- and impose a sentence that will “facilitate the integration of offenders back into the community.” United States v. Murray, 692 F.3d 273, 280 (3d Cir.2012) (quoting United States v. Albertson, 645 F.3d 191, 197 (3d Cir.2011)).
I.
As noted by my colleagues, our “review of sentencing decisions is limited to determining whether they are ‘reasonable’ ” under the familiar “abuse of discretion” standard of review. Gall v. United States, 552 U.S. 38, 46, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007); Maj. Op. at 190. Our inquiry entails examining whether a district court correctly followed the prescribed procedure for imposing a sentence. The court must determine the advisory sentencing range in the U.S. Sentencing Commission Guidelines Manual. It must then rule on motions for departure and, if a motion is granted, explain how it affects the advisory sentencing range. Lastly, the court must afford the parties an opportunity to argue for whatever sentence they deem appropriate, and decide upon an appropriate sen *195 tence after considering the applicable sentencing factors in 18 U.S.C. § 3553(a). See United States v. Lofink, 564 F.3d 232, 237-38 (3d Cir.2009); United States v. Bungar, 478 F.3d 540, 543-44 (3d Cir. 2007).
As my colleagues explain, the District Court erred at the first step in deciding upon an appropriate sentence for Carter’s violation of supervised release. It failed to identify the specific sex offense Carter committed. That determination was key to selecting the appropriate advisory sentencing range. See Maj. Op. at 192-93.
II.
To determine whether a sentence is reasonable, we examine “whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a).” United States v. Grier, 475 F.3d 556, 571 (3d Cir.2007) (en banc) (citation omitted). A district court need not “discuss and make findings as to each of the § 3553(a) factors,” but it “must be clear that the district court understood and reasonably discharged its obligation to take all of the relevant factors into account in imposing a final sentence.” United States v. Kulick, 629 F.3d 165, 176 (3d Cir.2010); Grier, 475 F.3d at 571 (citation omitted).
18 U.S.C. § 3583(e) specifically applies to a sentencing for a violation of supervised release. That provision is entitled: “Modification of Conditions or Revocation.” It states, in relevant part, that a court should refer to the following subsections of 18 U.S.C. § 3553(a) when modifying or revoking a term of supervised release:
(1) the nature and circumstances of the offense and the history and characteristic of the defendant;
(2) the need for the imposed sentence—
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant;

(D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(4) the kinds of sentence and the sentencing range established for ... the applicable category offense committed by the applicable category of defendant as set forth in the guidelines ...
(5) any pertinent policy statement ... issued by the Sentencing Commission
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.
(emphasis added).
Notably, § 3583(e) omits consideration of § 3553(a)(2)(A), which directs courts to the punitive purposes of sentencing. See 18 U.S.C. § 3553(a)(2)(A) (providing that a court shall consider the need for the sentence imposed “to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.”); Bungar, 478 F.3d at 543 n. 2.
The punitive purposes of sentencing are omitted from consideration under § 3583(e) because they are inconsistent with the primary purpose of supervised release — “to facilitate the integration of offenders back into the community.” Murray, 692 F.3d at 280 (quoting Albertson, 645 F.3d at 197).[2] The Supreme Court has made it clear that “Congress *196 intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.” United States v. Johnson, 529 U.S. 53, 59, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000) (citations omitted); see also S. REP. NO. 98-225, at 124 (1983), 1984 U.S.C.C.A.N. 3182, 3307 (“[t]he primary goal of such a term is to ease the defendant’s transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release.”).[3]
This focus on the need to assist in the offender’s rehabilitation will frequently counsel against responding to a violation of supervised release by imposing a custodial sentence at all because incarceration does not advance the primary focus of successful reintegration into society. See Tapia v. United States, — U.S. -, 131 S.Ct. 2382, 2390, 180 L.Ed.2d 357 (2011) (“Do not think about prison as a way to rehabilitate an offender.”); and 28 U.S.C. § 994(k) (“The Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.”).
Rather than attempting to punish for the new criminal conduct, “the sentence imposed upon revocation [is] intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision,” which is referred to as a “breach of trust.” U.S.S.G. ch. 7, pt. A3(b). As the Sentencing Commission explains, and as I noted at the outset, “the court with jurisdiction over the criminal conduct leading to revocation is the more appropriate body to impose punishment for that new criminal conduct, and that, as a breach of trust inherent in the conditions of supervision, the sanction for the violation of trust should be in addition, or consecutive, to any sentence imposed for the new conduct.” Id.; see also Bungar, 478 F.3d at 544 (A “[sjentence is imposed for [a] violation[] of supervised release primarily to sanction the defendant’s breach of trust [4]
The record here could be interpreted in a manner that would raise a concern that the District Court may not have “reasonably discharged its obligation to take all of the relevant factors into account in imposing [its] final sentence.” Grier, 475 F.3d at 571 (citation omitted) (emphasis added). The transcripts from Carter’s two violation hearings do not indicate that the Court considered § 3553(a)(2)(D), which would have focused the Court’s attention on the need to provide Carter with “educational or vocational training, medical care, or other correctional treatment in the most ef *197 fective manner.” Cf. United States v. Ol-hovsky, 562 F.3d 530, 549 (3d Cir.2009) (“[I]t is exceedingly difficult to review this sentencing transcript without becoming convinced that the district court was so appalled by the offense that it lost sight of the offender.”). Rather, imprisonment appears to have been the primary focus. See, e.g., App. at 104.[5]
Nevertheless, a reviewing court can affirm a sentence even if the sentencing court did not elaborate all of the factors considered, so long as the record is sufficient to conclude that the sentencing court considered the appropriate factors, and the resulting sentence is reasonable. See Ku-lick, 629 F.3d at 176. Here, it is clear that the Court was very concerned with the need to protect the public from Carter’s predatory behavior, and that concern was more than justified by Carter’s conduct while on supervised release.[6] Given Carter’s conduct, and the danger he posed to the most defenseless members of the community, the custodial sentence imposed was reasonable and there is no need for a remand to cure the procedural imperfections.
III.
Although I agree that remand is not warranted, it is nevertheless important to emphasize that § 3553(a) provides that “a court must impose a sentence that is ‘sufficient but not greater than necessary, to comply with purposes of sentencing.’ This requirement is often referred to as ‘the parsimony provision,’ and the Supreme Court has referred to it as the ‘overarching instruction’ of 18 U.S.C. § 3553(a).” Olhovsky, 562 F.3d at 547-48 (citing Kim-brough v. United States, 552 U.S. 85, 101, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007)).
Considerations of parsimony appear to be particularly appropriate when a court is focused on assisting with reintegration into society rather than punishing criminal behavior. However, given the nature of Carter’s violation, I believe the record is sufficient to establish that the Court acted reasonably in imposing a custodial sentence that clearly appears to have been driven by the Court’s concern for the danger Carter posed to the community rather than the objective of rehabilitation that would have otherwise restrained the Court’s discretion in such a proceeding. See 18 U.S.C. § 3553(a)(2)(C).

. I refer to supervised release because Carter was sentenced for violating supervised release. I note, however, that courts generally treat “violations of the conditions of probation and supervised release as functionally equivalent” because both are violations of court-ordered supervision. U.S.S.G. ch. 7, pt. B, introductory cmt; see, e.g., United States v. Frazier, 26 F.3d 110, 113 (11th Cir.1994) ("[W]e believe that Congress considered probation revocation and supervised release revocation to be so analogous as to be interchangeable.”). Therefore, although I refer to “supervised release,” my comments also apply to sentences imposed for violations of probation.

. But see United States v. Young, 634 F.3d 233, 241 (3d Cir.2011) ("[Cjonsideration of, *196 and explicit reference to, the § 3553(a)(2)(A) factors in imposing a sentence for the violation of supervised release is not a procedural error that renders the sentence per se unreasonable. Of course, there may be a case where a court places undue weight on the seriousness of the violation or the need for the sentence to promote respect for the law and provide just punishment.”).

. The reason that courts need to be concerned with an offender’s successful reentry into society is clear; it is beyond dispute that the vast majority of all offenders sentenced to prison will one day be released back into the community.

. Nevertheless, as I note below, see infra at III, the overarching principle of parsimony applies to revocation proceedings as well as to the initial sentencing, see 18 U.S.C. § 3553(a), and fidelity to that principle may preclude the imposition of additional incarceration absent concerns of public safety.

. Specifically, the transcripts from Carter’s violation hearings indicate that he Court accounted for § 3553(a)(1), (4), (5) and (6) by hearing in-depth arguments, and examining evidence, from both parties on whether Carter’s conduct constituted a “forcible sex offense” and, was thus a “crime of violence,” giving rise to a Grade A supervised release violation under Policy Statement § 7B1.1 of the Guidelines. See, e.g., App. at 38-50; 104-OS. That inquiry presumably included some consideration of § 3553(a)(2)(B) and (C) — the need for deterrence and to protect the public — because the Court departed upward from the advisory range of 27 to 33-months to impose a 37-month sentence. See App. at 104. Section 3553(a)(7) was apparently accounted for because the Court required that previously ordered, yet unpaid, restitution be satisfied. See App. at 105.

. In United States v. Bungar, a similar concern supported a sentence of five years imprisonment based on new offenses committed by a defendant on supervised release. 478 F.3d at 546 ("the Court sentenced Bungar above the suggested range based on its concerns that his return to illegal conduct, his extensive history of violent criminal offenses, and the recent evidence of domestic violence, showed not only that he continued to pose a threat to the community, but constituted a significant breach of the considerable trust that the Court reposed in him by granting a generous downward departure [in his initial sentencing] in 1997”).