**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3138
_____

UNITED STATES OF AMERICA

v.

BLAINE R. HANDERHAN,
                                        Appellant
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-10-cr-00298-001)
U.S. District Judge: Hon. Matthew W. Brann
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 10, 2023
_____

Before: SHWARTZ, RESTREPO, and CHUNG, <u>Circuit Judges</u>.

(Filed: July 11, 2023)
_____

OPINION[*]
_____

_____

  [*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Blaine Handerhan appeals the District Court's order modifying the conditions of his supervised release to include a non-therapeutic polygraph testing requirement. Because this did not constitute an abuse of discretion, we will affirm.

I

Following an undercover investigation, police executed a search warrant at Handerhan's residence and found thousands of images and dozens of videos of child pornography on Handerhan's computer, many of which depicted pre-pubescent children, sadomasochism, and bondage. Handerhan, a recently retired police officer, provided inconsistent statements as to whether he was the person responsible for the presence of the images and videos on his computer. He eventually pled guilty to possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

At sentencing, the District Court granted a downward variance from the recommended United States Sentencing Guidelines range of 151 to 181 months' imprisonment and sentenced Handerhan to ninety-six months' imprisonment followed by ten years' supervised release.[1] Handerhan's supervised release required that he complete

---

[1] Although it did not affect the Guidelines calculation, the Presentence Investigation Report ("PSR") noted that while employed as a police officer, Handerhan had at least one sexual encounter with a teenage girl, and that he violated the conditions

2

a sex offender treatment program, which included possible therapeutic polygraph testing. We affirmed the sentence on direct appeal. United States v. Handerhan, 739 F.3d 114 (3d Cir. 2014).

After Handerhan was released from prison, he began his supervised release. About one year later, the Probation Office filed a petition alleging Handerhan violated the supervised-release condition that he participate in a sex offender treatment program. The petition reported that Handerhan had been discharged from the program because he refused to take a sexual history polygraph test. The District Court scheduled a revocation hearing, but later canceled it because Handerhan had enrolled in another sex offender treatment program and submitted to a polygraph examination. Handerhan was successfully discharged from the program, and the petition was withdrawn.

Thereafter, the Probation Office requested that the District Court modify the conditions of supervised release to include a requirement that Handerhan submit to "periodic polygraph testing at the discretion of the probation officer as a means to ensure that [he is] in compliance with the requirements of [his] supervision or treatment program." App. 63. Handerhan objected, arguing that he had complied with all conditions of supervised release, including completing sex offender treatment, and that

---

of his pretrial release by installing a program on his computer and failing to disclose to the pretrial services officer a secondary hard drive that contained backups of files stored on the computer.

his treating therapist believed he "would be unable to successfully pass a polygraph due to [his] OCD and mental illness." App. 52.

The District Court held a hearing as required by Federal Rule of Criminal Procedure 32.1(c)(1). There, the Court considered the factors under 18 U.S.C. § 3553(a) in light of the evidence presented, including (1) the number and nature of images and videos of child pornography found; (2) the inconsistent stories Handerhan told investigators; (3) that he engaged in sexual activity with a teenage girl as a police officer; (4) his initial refusal to complete a sex offender treatment program; (5) the need to deter future criminal conduct; and (6) the need to protect the public from future crimes by "help[ing] the Probation Office determine whether any further action or investigation is required to ensure [Handerhan's] compliance with the terms of supervised release." App. 57. Based on these considerations, the Court added the polygraph condition, concluding that it was "reasonable" and "not greater than necessary to meet sentencing objectives."[2] App. 57.

Handerhan appeals.

---

[2] The written order states: "You must submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure that you are in compliance with the requirements of your supervision or treatment program." App. 3.

4

II[3]

A

District courts "possess broad discretionary authority to modify the terms and conditions of a defendant's supervised release." United States v. Wilson, 707 F.3d 412, 416 (3d Cir. 2013). Under 18 U.S.C. § 3583(e)(2), a court may, after considering the factors set forth in 18 U.S.C. § 3553(a), "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." The § 3553(a) factors include: (1) the defendant's offense and his history and characteristics; (2) the need for adequate deterrence; (3) the need to protect the public from further crimes of the defendant; and (4) the need to provide the defendant with correctional treatment, including medical care. United States v. Miller, 594 F.3d 172, 183 (3d Cir. 2010). In addition, the modified condition should "reasonably relate" to these factors and "involve[] no greater deprivation of liberty than is reasonably necessary" to achieve § 3553(a)'s goals.[4] 18 U.S.C. § 3583(d). "[W]e review the

---

[3] The District Court had jurisdiction pursuant to 18 U.S.C. §§ 3231 and § 3583(e). We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We review challenges to the imposition of a special condition of supervised release, as well as a district court's decision to modify the terms of release, for abuse of discretion. United States v. Murray, 692 F.3d 273, 278 (3d Cir. 2012).

[4] We have expressed doubt that "a district court must find new or unforeseen circumstances before it may modify a person's conditions of supervised release." Murray, 692 F.3d at 278. In any event, there were changed circumstances here, namely that when Handerhan completed his sex offender treatment program, he was no longer

5

reasonableness of a supervised release term against the § 3553(a) factors, recognizing that the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." United States v. Murray, 692 F.3d 273, 281 (3d Cir. 2012).

The District Court added a non-therapeutic polygraph testing requirement to the conditions of Handerhan's supervised release. Having considered each of the § 3553(a) factors, including the seriousness and nature of the underlying offense and Handerhan's conduct before and after his arrest,[5] the District Court explained that the polygraph condition was "reasonable" because it would help deter "criminal conduct" and "protect the public from further crimes of this Defendant" by "help[ing] to ensure Mr. Handerhan follows the terms of his supervised release." App. 57; United States v. Lee, 315 F.3d 206, 217 (3d Cir. 2003) (holding that imposing a polygraph condition does not constitute

---

subject to any polygraph condition. Furthermore, polygraph testing for supervision purposes, which is used to ensure compliance with conditions for release and prevent recidivism, differs from its use in a therapeutic setting, which seeks to ensure that a defendant is forthcoming and thus amenable to treatment.

[5] Contrary to Handerhan's assertion, the District Court did not "unreasonably adopt[] a one-size-fits-all approach to polygraph examinations," Appellant's Br. at 16, as the record demonstrates that the Court conducted an "individualized assessment based upon the facts presented," App. 57. The Court also did not "ignor[e] facts that militated against the condition." Appellant's Br. at 16. Although "[a] sentencing court does not have to discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing," Murray, 692 F.3d at 281, the record shows the Court considered, for example, Handerhan's mental health conditions, but determined that, based on other factors, the polygraph condition was appropriate.

an abuse of discretion because it "is reasonably related to the protection of the public" as it "could be beneficial in enhancing the supervision . . . of [the defendant].").  We agree.

Moreover, as the District Court also observed, the polygraph condition "does not involve greater deprivation of [the defendant's] liberty than is reasonably necessary" because the defendant "is already directed to report periodically to the probation officer and provide truthful answers after he is released from imprisonment," and so the additional requirement of polygraph testing "does not place a significantly greater demand on him," Lee, 315 F.3d at 217.  Therefore, the Court did not abuse its discretion in imposing the polygraph condition on Handerhan.

The polygraph condition, which requires Handerhan to "submit to periodic polygraph testing at the discretion of the probation officer," App. 3, also did not involve an unreasonable delegation of judicial authority to the probation officer.  Indeed, in United States v. Senke, 986 F.3d 300 (3d Cir. 2021), we held that an identically worded polygraph testing condition was proper.  There, we explained that "courts cannot be expected to map out every detail of a defendant's supervised release" and found no improper delegation where probation officers merely determined "the details with respect to 'selection and schedule' of the testing."  Id. at 319-20 (quoting United States v. Pruden, 398 F.3d 241, 251 (3d Cir. 2005)).  Here, Handerhan's probation officers have nothing more than the same ministerial duty we approved in Senke.  Accordingly, the District Court did not unreasonably delegate its judicial authority.

7

Finally, contrary to Handerhan's assertion, the District Court's oral statements at the modification were not inconsistent with nor did they limit the written polygraph testing condition. The record shows that the Court placed no limitations on the scope of the testing. Rather, it simply observed that it did not "think there's any particular interest in going back to some long sexual history, whatever it is [Handerhan is] concerned about," and suggested that he "go over those provisions with [the Probation Office]." App. 57. Therefore, the District Court did not orally limit the scope of the polygraph testing condition and thus the written order governs.[6]

## III

For the foregoing reasons, we will affirm the District Court's order.

---

[6] While a district court need not explicitly define the scope of the questioning on the judgment itself, as a general matter, "the scope of the questioning should be limited to that which relates to the supervision, monitoring, and treatment of the [defendant]." Lee, 315 F.3d at 215.