**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3228
_____

UNITED STATES OF AMERICA

v.

COY CHRISTOPHER KLINGER,
Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 1:14-cr-00233-001
District Judge:  Honorable Christopher C. Conner
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 21, 2025
_____

Before:  HARDIMAN, FREEMAN, and CHUNG, Circuit Judges

(Filed: November 5, 2025)
_____

OPINION*
_____

CHUNG, Circuit Judge.

Coy Klinger challenges his modified conditions of supervised release as an abuse

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

of the District Court's discretion.  We will affirm the District Court's order.

I.    BACKGROUND[1]

In February of 2015, Klinger pleaded guilty to one count of sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a) and 1594(a).  At Klinger's plea hearing, the Government alleged in its statement of facts that Klinger solicited, or attempted to solicit, six different minors into prostitution.  Klinger's counsel clarified, however, that Klinger was "not admitting to a number today," SA20–21, and that while minors "got caught up in" his business, "it wasn't designed to provide minors to clients."  SA22.  Klinger confirmed that he solicited "at least one minor … for the purposes of prostitution and a financial gain."  SA22–23.

When the United States Probation Office ("Probation") submitted Klinger's Presentence Investigation Report ("PSR"), the PSR contained similar allegations that Klinger had solicited six minors into prostitution.  Defense counsel filed objections to several paragraphs in the PSR, including its characterization that Klinger knowingly solicited multiple minors into prostitution.  Pursuant to a plea agreement, the Government and Klinger withdrew all objections to the PSR and jointly recommended a sentence of 120 months' imprisonment.  In his sentencing memorandum, Klinger stated that his withdrawal of objections "should not be construed as an admission to all the facts contained in the presentence report."  Reply Br. 7 n.4.

Similar to his plea admissions, Klinger admitted at sentencing that he advertised a

---

[1]    Because we write for the parties, we recite only the facts pertinent to our decision.

2

minor's services for prostitution after learning that she was a minor.  Klinger was sentenced to a 120-month term of imprisonment, to be followed by a five-year term of supervised release.

Klinger was released from imprisonment in 2023 and began sex-offender treatment at Commonwealth Clinical Group ("CCG") as a condition of his supervised release.  In May of 2024, Klinger's CCG therapist provided Probation with a treatment progress summary that characterized Klinger's progress as poor.  This assessment was based on, among other things, the fact that Klinger denied knowingly soliciting minor females into prostitution, after which he took a polygraph and "exhibited consistent, significant, and specific emotional disturbances" when asked about the issue, A90; engaged in manipulation and triangulation of treatment staff; and violated several treatment recommendations, including soliciting casual sex through online websites and viewing pornography.  During treatment, Klinger also admitted to viewing child pornography and reported two uncharged incidents of vaginal intercourse with minor victims.  Accordingly, Klinger's therapist made several recommendations to Probation to reduce Klinger's risk of harm to the community.

Probation subsequently petitioned the District Court to modify the terms of Klinger's supervised release by adding three new special conditions.  Those proposed special conditions included, in essence: (1) that Klinger have no direct contact with minors without approval of Klinger's probation officer; (2) that Klinger's use of the internet be limited to "legitimate and necessary reasons" and websites "conveying essential information"; and (3) that Klinger have no access to "visual depictions" of

3

"sexually explicit conduct," as defined in 18 U.S.C. § 2256. Resp. Br. 16. After two hearings, during which the District Court heard unrebutted testimony from Klinger's therapist about his multiple violations during treatment, the District Court largely imposed the proposed conditions. However, in response to Klinger's objections, the District Court modified the first proposed condition by allowing Klinger to have direct contact with children so long as such contact was supervised.

Klinger objected at the hearings on procedural and substantive reasonableness grounds, and timely appealed. On appeal, he contends that the District Court committed procedural error by relying on disputed and unproven facts from the PSR in imposing the modified supervised release terms. He also argues that the District Court's imposition of the conditions was not narrowly tailored to the facts of his case and therefore, substantively unreasonable. He further argues that the new special conditions are overbroad and violate his First Amendment rights.

II.    DISCUSSION[2]

"The abuse-of-discretion standard applies to both our procedural and substantive reasonableness inquiries." United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009). See also United States v. Murray, 692 F.3d 273, 278 (3d Cir. 2012) ("[W]e review challenges to the imposition of a special condition of supervised release, as well as a district court's decision to modify the terms of release, for abuse of discretion." (internal

_____

[2]    The District Court had jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3583(e). We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

quotation marks and citation omitted)).

A. <u>The District Court's Modification of Klinger's Conditions of Release was Procedurally Reasonable.</u>

A sentence is procedurally unreasonable when a district court "base[s] its decision on a clearly erroneous factual conclusion or an erroneous legal conclusion." <u>Tomko</u>, 562 F.3d at 567–68. Klinger contends that the District Court erroneously relied on disputed portions of the PSR. <u>See</u> Fed. R. Crim. P. 32(i)(3)(B) (sentencing court must rule on a disputed portion of the PSR or "determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing"). Specifically, Klinger reasons that CCG administered his denial polygraph based on the assumption that the PSR reflected Klinger's intent to target minors for solicitation into prostitution.[3] Because his failure of the polygraph was one factor cited

---

[3] Klinger distinguishes this from the conduct he admitted to: soliciting at least one individual into prostitution despite knowing that the individual was a minor. We note, however, that this was not the focus of Klinger's argument at his change-of-supervised-release-conditions hearing. Rather, as at sentencing, he focused on the fact that he had only admitted to conduct relating to one minor, not multiple. A87, A88, A97. In any case, we need not address whether the contested portions of the PSR characterized Klinger's conduct as intentionally targeting minors and whether Klinger preserved this argument when opposing the imposition of new conditions. As discussed above, the distinction identified by Klinger did not contribute to the imposition of the new conditions.

Furthermore, the Government contends that because Klinger withdrew his objections to the PSR and decided not to contest its factual content, Klinger's "offense conduct" and "relevant conduct" for his federal sex trafficking offense includes his soliciting or attempting to solicit "eight female minors" into prostitution. Resp. Br. 18 n.11. We also do not address this argument here, as it is unnecessary for resolution of this matter. <u>See</u> <u>infra</u> n.4.

5

by CCG in assessing Klinger's treatment progress as poor, Klinger further reasons that the District Court abused its discretion in imposing the special conditions without first resolving his dispute of the PSR's characterization of his conduct. We disagree.

As noted above, the District Court heard unrebutted testimony from Klinger's CCG therapist regarding Klinger's numerous compliance failures during his treatment. In contemplating whether to impose the proposed conditions, the District Court made clear that any actions it took would be based on Klinger's myriad failures to comply with treatment (discussed further in Section B, *infra*). Moreover, the District Court explained how each new condition related to Klinger's non-compliance, and it modified the first condition proposed by Probation in response to Klinger's objections.

While the District Court mentioned Klinger's failed denial polygraph, its determination that Klinger was on the verge of unsuccessful discharge from treatment was based on the totality of Klinger's noncompliance. Neither the District Court's reliance on unrebutted testimony that Klinger failed to comply with treatment in multiple respects, nor its decision to impose the new conditions, meaningfully relied on the failed polygraph.[4] Accordingly, the District Court's imposition of the new conditions was procedurally reasonable and a proper exercise of its discretion.

B.     The District Court Did Not Abuse Its Discretion because the Special Conditions are Reasonably Tailored and Do Not Violate Klinger's

---

[4]     Even if we were to conclude that the District Court abused its discretion in this regard, we would conclude any error was harmless given that it was only one of many factors considered by the District Court, and the other factors independently supported imposing the new special conditions. United States v. Langford, 516 F.3d 205, 215 (3d Cir. 2008).

6

Constitutional Rights.

Klinger also challenges the new conditions as substantively unreasonable, arguing that the District Court applied a "one-size-fits-all" approach and included unreasonably onerous conditions of supervision to compel compliance with his treatment program. He further argues that the new conditions are unconstitutionally overbroad in violation of his First Amendment rights. Op. Br. 22. These claims lack merit.

With respect to modifying conditions of supervised release, 18 U.S.C. § 3583(e)(2) requires the sentencing court to consider certain factors set forth in § 3553(a), adhere to the relevant Federal Rules of Criminal Procedure, and follow the "provisions applicable to the initial setting of the terms and conditions of post-release supervision," § 3583(e)(2), including that the condition "involve[] no greater deprivation of liberty than is reasonably necessary," § 3583(d)(2). Our review for substantive reasonableness focuses on the "totality of the circumstances" and asks "whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." Tomko, 562 F.3d at 567–68. A district court's sentence is substantively unreasonable when "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." Id. at 568.

The District Court properly exercised its discretion since all three new special conditions are "reasonably related" to the relevant factors set forth in 18 U.S.C. § 3553(a), as required by 18 U.S.C. § 3583(e). Specifically, the "nature and circumstances" of Klinger's offense involve his use of the internet and social media to

7

solicit at least one minor into prostitution. Moreover, his "history and characteristics" include (1) failing to comply with treatment guidelines by viewing pornography online and soliciting casual sex through a social media site; (2) "manipulation and triangulation" of CCG staff by falsely telling some staff members, when they attempted to enforce treatment guidelines with him, that other staff members had given him permission to engage in his desired course of conduct; e.g., taking a job that would allow for the possibility that he would have direct, unsupervised contact with minors; (3) previously viewing child pornography, conduct unknown to the District Court when imposing conditions at Klinger's original sentencing; and, (4) engaging in uncharged acts of vaginal intercourse with two minor victims, conduct similarly unknown to the District Court at sentencing. In light of the above, the District Court did not set "one-size-fits all" conditions. Rather, the District Court properly exercised its discretion and imposed conditions reasonably related to the nature and circumstances of Klinger's offense, his "history and characteristics" including his treatment violations and new revelations in treatment, the resulting need to protect the public, and the need to provide Klinger with "correctional treatment in the most effective manner." 18 U.S.C. §§ 3553(a)(1), (a)(2)(C)–(D); 18 U.S.C. § 3583(e).

We also perceive no abuse of discretion related to the requirement that conditions of release impose "no greater deprivation of liberty than is reasonably necessary." 18 U.S.C. § 3583(d)(2). For instance, the internet ban includes both per se and approval-based exceptions. Contra United States v. Voelker, 489 F.3d 139, 144–50 (3d Cir. 2007) (holding that "absolute lifetime ban" on defendant's computer use and internet access

8

with no employment or education-related exceptions involved a greater deprivation of liberty than reasonably necessary).  The ban on direct, unsupervised contact with minors absent approval excludes "incidental" interactions with minors, is less stringent than the condition sought by Probation, and was tailored after hearing argument by Klinger.  Cf. United States v. Senke, 986 F.3d 300, 319 (3d Cir. 2021).  In addition, the conditions are reasonably limited in duration, lasting only for the remainder of Klinger's five-year term of supervised release.  See United States v. Thielemann, 575 F.3d 265, 278 (3d Cir. 2009); contra Voelker, 489 F.3d at 144–49.  Finally, the District Court did not simply impose the conditions as a knee-jerk reaction to the nature of Klinger's offense.  Indeed, the conditions were not imposed until after Klinger's post-release conduct and disclosures presented new and previously unknown circumstances warranting modification of his existing conditions.  See Murray, 692 F.3d at 279 (changed circumstances can justify modifying supervised release conditions).  As noted above, the District Court concluded that the conditions were necessary only after hearing evidence of Klinger's new revelations and his struggles in treatment.

With respect to Klinger's constitutional concerns as to all three new conditions, we reject his argument that they are unconstitutionally overbroad for the same reasons that we reject his argument that the conditions are a "greater deprivation of liberty than [] reasonably necessary."  See United States v. Crandon, 173 F.3d 122, 128 (3d Cir. 1999) (upholding restrictions on employment and internet use against constitutional challenge when conditions were narrowly tailored and related to relevant § 3553 factors).  Furthermore, with regard to the third condition, we have upheld First Amendment

9

challenges to similar conditions involving restrictions on sexually explicit material when we have concluded that "there is a significant nexus between restricting [the defendant] from access to adult 'sexually explicit' material and the goals of supervised release, and that the restriction … is not overbroad or vague considering the content of the instant record." Thielemann, 575 F.3d at 277. We reach the same conclusion that a nexus exists here, given that Klinger's entire business model centered around searching online for, soliciting, photographing, and ultimately sex trafficking youthful-looking women and given his non-compliance in treatment.

We cannot conclude that "no reasonable sentencing court would have imposed the same [conditions] on [Klinger] for the reasons the district court provided." Tomko, 562 F.3d at 568. Accordingly, the District Court did not impose substantively unreasonable conditions and thereby abuse its discretion in modifying Klinger's conditions of supervised release.

III.    CONCLUSION

For the foregoing reasons, we will affirm.