PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1049
_____

UNITED STATES OF AMERICA

v.

RANDY A. ALBERTSON,

Appellant
_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. Criminal Action No. 4-06-cr-00177-001)
District Judge:  Honorable John E. Jones, III
_____

Argued September 23, 2010
_____

Before:  McKEE, Chief Judge, AMBRO
and CHAGARES, Circuit Judges


(Opinion filed :  May 04, 2011)

Salvatore C. Adamo, Esquire (Argued)
289 Town Center Boulevard, Suite 300
Easton, PA  18040

      Counsel for Appellant

William C. Simmers, Esquire
Office of United States Attorney
240 West Third Street, Suite 316
Williamsport, PA  17701

Theodore B. Smith, III, Esquire (Argued)
Office of United States Attorney
228 Walnut Street
P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA   17108

      Counsel for Appellee

————————————

OPINION OF THE COURT

————————————

AMBRO, <u>Circuit Judge</u>

We consider once again what are appropriate computer-related supervised release conditions for child pornography offenders. Appellant Randy Albertson pled guilty to one count of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B). The District Court sentenced him to 60 months' imprisonment (the minimum

mandated) and 20 years' supervised release with eight special conditions. On appeal, Albertson challenges the reasonableness of the 20-year term and three of the special conditions of his supervised release, including a restriction on internet access, mandatory computer monitoring, and a restriction on his association with minors. As we agree with Albertson only that a wholesale ban on his internet use is broader than necessary to accomplish the sentencing goals of 18 U.S.C. § 3553(a), we affirm the duration of the supervised release term and the association-with-minors restriction, vacate and remand the internet restriction, and remand the monitoring requirement for adaption to a more tailored internet restriction.

## I. Background

Albertson's problem with child pornography surfaced in 2005 when his wife discovered a pornographic image in his dresser drawer. Despite the family's efforts to monitor his computer access thereafter, Albertson, a former prison guard, continued viewing child porn online. In addition, in 2006, Albertson's wife (they are now divorced) reported to the local police that he had molested her teenaged daughter (his then-stepdaughter).[1] Consequently, the police searched the family computer. They found over 700 images of child porn, some of which featured pre-pubescent children.

Albertson was charged in a two-count superseding indictment with receipt and possession of child pornography,

---

[1] He was arrested for aggravated indecent assault, indecent exposure, and indecent assault of a person less than 16 years of age. These charges were pending at the time of Albertson's federal sentencing hearing and he has since been convicted of the indecent assault charge.

3

in violation of 18 U.S.C. § 2252A(a)(2)(B) and 18 U.S.C. § 2252A(a)(5)(B). He pled guilty to the receipt count and stipulated to 39 pornographic images. Receipt of child porn carries a mandatory minimum of five years' imprisonment, 18 U.S.C. § 2252A(b)(1), and that minimum was the jail term imposed here. Five years' supervised release is also required. 18 U.S.C. § 3583(k). In the plea, the parties agreed to a supervised release term of up to 25 years (with the parties able to argue at sentencing the appropriate term).

At his 2008 sentencing hearing, Albertson himself argued to the Court as follows:

> I found court cases—and this is through a Voeker (phonetic) case that I found that involves two individuals, a Crandon and a Lloyd (phonetic), both received out of the Third Circuit here under five year sentences for supervised release, the Lloyd being, they're— from what I've read out of their cases, you know, they don't even compare to my case, my background, or anything that I have ever done as far as law enforcement is concerned. I ask that you, you know, review that and think about even less time than five years [of supervised release] because those two cases, Crandon and Lloyd, they got less than five out of this district. I ask for the same thing.

The Government requested the maximum supervised release term permitted by the plea agreement—25 years. It stated the nature of the offense and the relevant conduct—that over 700 pornographic images were found (including pre-pubescent images) on Albertson's computer, his wife's discovery of an image, and his failure to abide by his family's informal restrictions on his computer use.

4

After imposing the 60-month prison term, the Court decided on a 20-year term of supervised release with eight special conditions. Its primary considerations were the seriousness of the offense, the goal of "deter[ring Albertson's] conduct in the future," and the need "to protect the public." On these bases, it found "that an extended term of supervised release is appropriate."

Albertson appeals three of the special conditions.[2] He was: banned from "associat[ing] with children under the age of 18 (with the exception of his children) except in the presence of an adult who has been approved by the Probation Officer" (Special Condition 4); barred from "us[ing] a computer with access to any 'on-line computer service' without the prior written approval of the probation officer" (Special Condition 5); and required to submit to an initial inspection, and subsequent inspections, of his computer and to allow the installation of monitoring or filtering software (Special Condition 7). The District Court did not discuss the details of these conditions nor did it provide specific reasons for imposing them. On appeal, Albertson argues they subject him to a greater deprivation of liberty than necessary. He relies principally on our decision in *United States v. Miller*, 594 F.3d 172 (3d Cir. 2010). There, as here, we were confronted with a ban on internet use that was imposed on a child porn offender as a special condition of his supervised release. We concluded that the internet ban—which was imposed for life—was overbroad.

---

[2] The District Court had jurisdiction under 18 U.S.C § 3231, which provides the district courts of the United States with original jurisdiction over crimes against the laws of the United States. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II. Waiver

In his opening brief, Albertson argues solely that the 20-year supervised release term is unreasonable. He neither raises nor refers to the conditions of his supervised release. It is only in his reply brief that he addresses those conditions and argues they are unlawful in light of *Miller*. Thus, we address a threshold question of waiver.

Albertson's reason for his untimeliness was that our decision in *Miller* was filed one day after his opening brief. He informed us that it had not occurred to him to challenge his conditions prior to our analysis in that case. According to the Government, however, Albertson's failure to challenge the conditions of his supervised release in his opening brief waived the argument. It urged us to strike the reply brief or, at least, consider the argument waived. Rather than strike the reply, we granted the Government's request to file a sur-reply.

It is standard practice that an appellant must state all issues raised on appeal in the opening brief. *See* Fed. R. App. P. 28(a)(5); Third Cir. Local App. R. 28.1(a)(1). Indeed, it is essential to our review that the appellant properly present all issues in his opening brief. "It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal." *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005); *see, e.g.*, *In re Surrick*, 338 F.3d 224, 237 (3d Cir. 2003); *see also Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publs., Inc.*, 931 F.2d 1002, 1011 (3d Cir. 1991) (finding waiver because "[n]owhere in the 'Statement of the Issues Presented' or the 'Argument' section of plaintiff's appellate brief are [the district court's] conclusions questioned"). For these reasons, "we usually refrain from addressing an argument or issue not properly raised and discussed in the appellate briefing."

*Forestal Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 403 (3d Cir. 2010) (Cowen, J., dissenting).

However, the rule does yield in "extraordinary circumstances." *See Simmons v. City of Phila.*, 947 F.2d 1042, 1065 (3d Cir. 1991). Though our case law repeats the rule—waiver absent extraordinary circumstances—we have yet to flesh out the extraordinary circumstance exception. We find instructive an approach set out by one of our sister courts of appeals. In *In re Kane*, the First Circuit Court of Appeals acknowledged, as we do, that it lacked explicit standards for "what constitutes such extraordinary circumstances." 254 F.3d 325, 331 (1st Cir. 2001). It did, however, identify certain factors as "obvious" ones to consider: "whether there is some excuse for the failure to raise the issue in the opening brief; how far the opposing party would be prejudiced; and whether failing to consider the argument would lead to a miscarriage of justice or undermine confidence in the judicial system." *Id.*

We agree and adopt these principles. Applied to the facts of Albertson's case, we believe the balance weighs in favor of reviewing the merits of the challenge to his supervised release conditions.

With respect to the first factor, we appreciate that Albertson's reason for failing to raise the issue in his opening brief is not compelling. As noted, his counsel stated at argument that, prior to *Miller*, he had not realized that a challenge to the conditions might succeed. This might be true as a subjective matter. Objectively, however, the basis for *Miller* already existed in a line of cases, discussed below, concerning computer-related conditions of supervised release that were imposed on child porn offenders. Thus, standing alone, the first factor does not cut against waiver.

7

However, the second two factors do weigh against waiver. The Government would suffer no prejudice in this case. Not only was it permitted to file a sur-reply, but it then failed to pursue meaningfully its waiver argument in the sur-reply. This indicates that it would not be prejudiced significantly by our review of the merits.

Lastly, the miscarriage of justice factor is "somewhat similar to the 'plain error' rule, which is applied in the context of appeals from criminal trials, and allows appellate courts to consider defects at the trial level even when the defendant has failed to lodge an appropriate objection." *Gambino v. Morris*, 134 F.3d 156, 169 n.12 (3d Cir. 1998) (Roth, J., concurring) (citing Fed. R. Crim. P. 52(b)). In other words, we may consider an issue, despite the fact that it was improperly raised on appeal, if the District Court plainly erred in such a way as to affect the appellant's substantial rights. *See* Fed. R. Crim. P. 52(b); *United States v. Thielemann*, 575 F.3d 265, 270 n.9 (3d Cir. 2009) (citing *United States v. Olano*, 507 U.S. 725, 732-34 (1993)). "[E]ven where plain error exists [that affects substantial rights], our discretionary authority to order correction is to be guided by whether the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Knight*, 266 F.3d 203, 207 (3d Cir. 2001). If forced to ignore the challenge in this case, we turn a blind eye to supervised release conditions that are directly contrary to the line of cases, discussed below, governing the propriety of internet restrictions for child porn offenders in this Circuit. To do so would seriously "undermine confidence in the judicial system." *In re Kane*, 254 F.3d at 331. Accordingly, on

8

balance, the *In re Kane* factors we adopt tilt in favor of our review of the merits.[3]

### III.  The Special Conditions of Supervised Release

Because we conclude that Albertson's arguments are not waived, we turn to the merits of his appeal.[4]  A sentencing

---

[3] Our reasoning in *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154 (3d Cir. 2001), also counsels against waiver.  In that case, involving an interlocutory appeal of a class certification issue, the defendants contended that the plaintiffs had not preserved the issue of superiority—a criterion for class certification under Federal Rule of Civil Procedure 23(b)(3)—because they did not address the issue in their initial brief.  We rejected the waiver argument because "[a]lthough the plaintiffs d[id] not address superiority directly in their brief, they raise[d] the issue specifically in their reply brief, and the facts and arguments on superiority [we]re present throughout their [opening] brief." *Id.* at 191 n.35.  As such, "[w]e believe[d] that the issue of superiority was implicit in the plaintiffs' opening brief and was thus adequately raised on appeal." *Id.*  Though a challenge to the special conditions of supervised release is perhaps not so obviously subsumed within a reasonableness challenge as is the issue of superiority in a class action certification case, to the extent that it is, our reasoning in *Newton* weighs against waiver.

[4]  We agree with the Government that, because Albertson did not object to the special conditions of supervised release at sentencing, our review is for plain error.  *United States v. Warren*, 186 F.3d 358, 362 (3d Cir. 1999).

9

judge has wide discretion in imposing terms of supervised release. Subsections 3583(d)(1) and (2) authorize a sentencing court to impose conditions of supervised release provided they are reasonably related to the 18 U.S.C. § 3553(a) factors[5] and involve "no greater deprivation of liberty than is reasonably necessary" to fulfill the purposes set out in that provision. *See United States v. Pruden*, 398 F.3d 241, 248 (3d Cir. 2005). Accordingly, as the Sentencing Commission acknowledges, we review the reasonableness of a supervised release term against the § 3553(a) factors, recognizing that "the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." U.S. Sentencing

---

[5] The factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed . . . (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for [the offense as set forth in the Guidelines] . . . ; (5) any pertinent policy statement . . . [;] (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

10

Comm'n, *Federal Offenders Sentenced to Supervised Release* 8-9 (2010). Notably, in addition to the sentencing goals enumerated, § 3553(a) also requires parsimony—that "[t]he court impose a sentence sufficient, but not greater than necessary."

## A. The Internet Ban & the Monitoring Requirement

According to Albertson, the requirements that he not use a computer with any form of "online" access unless pre-approved by his probation officer, and the attendant monitoring of his computer usage, are disproportionate to his criminal history and offense characteristics. Thus, he argues, they are overbroad.

As noted above, we have recently dealt with a similar question in *Miller*, in which a child porn offender was sentenced to a lifetime term of supervised release that banned access to the internet. In ruling that the condition was overbroad, we reviewed our case law on "supervised release conditions restricting computer and internet usage for child pornography offenders." 594 F.3d at 185; *see Thielemann*, 575 F.3d 265; *United States v. Voelker*, 489 F.3d 139 (3d Cir. 2007); *United States v. Freeman*, 316 F.3d 386 (3d Cir. 2003); *United States v. Crandon*, 173 F.3d 122 (3d Cir. 1999); *see also United States v. Maurer*, No. 10-3049, 2011 WL 1519201 (3d Cir. Apr. 22, 2011).

Taken together, the *Miller-Crandon* line of cases yields three themes. First, though not at issue here, a complete ban on the use of a computer and internet will rarely be sufficiently tailored to the § 3553(a) factors. Our opinion in *Voelker* illustrates this point. There, the defendant was banned from using all computers for life following a plea to receiving child pornography. We ruled that the "outright lifetime ban" on computers was "the antithesis of a narrowly

11

tailored sanction, a greater deprivation of liberty than [was] reasonably necessary, and not reasonably related to the factors set forth in . . . § 3583." *Miller*, 594 F.3d at 185 (quoting *Voelker*, 489 F.3d at 144-45) (internal quotation marks omitted).

Second, moving along the spectrum of restrictiveness, a complete ban on internet access, except with prior approval of probation, may be permissibly imposed temporarily on those offenders who have used or have clearly demonstrated a willingness to use the internet as a direct instrument of physical harm. For instance, in *Thielemann*, *Crandon*, and *Maurer* the defendants used or demonstrated a willingness to use the internet to solicit, communicate with, or abuse a minor in conjunction with child porn offenses. In *Thielemann*, the defendant encouraged his online chat companion to abuse sexually a minor girl in front of a webcam. Moreover, Thielemann had several persons involved, and was the hub of the offensive conduct. *See* 575 F.3d at 268, 269 n.4. Similarly, in *Crandon* the defendant used the internet to communicate, arrange to meet, and have sexual relations with a minor girl. In *Maurer*, the defendant expressed an interest in sexual contact with minors while using the internet in the attempt to arrange a sexual encounter. Thielemann and Crandon both used the internet to encourage or otherwise initiate the sexual abuse of a minor, as distinguished from solely accessing pornographic sites. Maurer clearly demonstrated a willingness to use the internet for these same purposes. We upheld, in their cases, conditions that proscribed all internet access for ten, three, and five years, respectively.

Finally, where the child porn offense does not involve a "live" component (that is, direct involvement or communication, including the attempt or demonstrated willingness to have direct involvement or communication,

12

with a putative victim via the internet), the district courts should consider whether a tailored internet limitation is feasible.  In *Freeman*, for example, the defendant pled to possessing and receiving child porn.  There, as here, he had also molested children in the past.  But absent the direct link between the internet and the abuse, we concluded that a blanket ban was overbroad.  We noted that "[t]here is no need to cut off [a child porn offender's] access to email or benign internet usage when a more focused restriction, limited to pornography sites and images, can be enforced by unannounced inspections of material stored on [the offender's] hard drive or removable disks."  *Miller*, 594 F.3d at 186 (quoting *Freeman*, 316 F.3d at 392) (alteration in original) (internal quotation marks omitted).

Building from these themes, we set out in *Miller* three factors for assessing whether a supervised release condition is overbroad.  We consider the scope of the condition first with respect to substantive breadth and second with respect to its duration.  *Miller*, 594 F.3d at 187 & n.9 (noting the similar factor-based approach adopted in *United States v. Heckman*, 592 F.3d 400, 405-08 (3d Cir. 2010)).  Third, we assess "the severity of the defendant's criminal conduct and the facts underlying the conviction, with a particular focus on whether the defendant used a computer or the internet to solicit or otherwise personally endanger children."  *Miller*, 594 F.3d at 187.

Because we are mindful of the interplay between prison time and the term of supervised release, we now add it as a fourth factor.  As a general matter, we agree with the Government that a district court may find it proper to impose a longer term of supervised release to follow a relatively

shorter term of imprisonment.[6]   In this context, we believe that the proportion of a supervised release restriction to the total period of restriction (including prison time) is also relevant to our review.

We now apply these factors to Albertson's case.  First, we note that the restrictiveness of the internet condition mirrors those in *Thielemann* and *Crandon*—no internet access unless preapproved by probation—a restriction that we recognize as sweepingly broad and, indeed, too broad unless the defendant has used the internet as an instrument of harm. *See also Maurer*, 2011 WL 1519201, at *7 (recognizing that, in addition to direct physical harm, an "expressed interest in minors, . . . coupled with [a] demonstrated willingness to use the internet as a means for arranging sexual encounters, presents a tangible risk to children," and thus supports as reasonable a total internet ban).  As one of our sister courts of appeals has said, "such a ban renders modern life—in which, for example, the government strongly encourages taxpayers to file their returns electronically, where more and more commerce is conducted on-line, and where vast amounts of government information are communicated via website— exceptionally difficult." *United States v. Holm*, 326 F.3d 872, 878 (7th Cir. 2003).  This aspect of the scope factor favors Albertson.

The duration of the supervised release term has an interesting twist.  We recognize that his 20-year term is shorter than the lifetime bans imposed in both *Miller* and

---

[6] We do not imply, however, that, if there is a longer prison term, a shorter term of supervised release is necessarily appropriate.

*Voelker*.[7]  However, the length of the term must be considered relative to the defendant's age.  We do not believe that there is a meaningful distinction between the lifetime ban we struck down in *Miller* and the 20-year term imposed here. Miller was 60 at the time of his sentencing and Albertson was 42.  Assuming an 80-year life expectancy, the combined duration for each is essentially the same.[8]

Turning to the conduct factor, the aforementioned cases show that a key consideration is whether the defendant used the internet "to actively contact a child and solicit sexual contact."  *Miller*, 594 F.3d at 188.  Albertson did not.  With this in mind, we repeat what we said in *Miller*:  "While we do not intend to minimize the serious harm caused by possession of child pornography, [Albertson's] use of the internet poses a danger that differs in both kind and degree from the conduct in *Crandon* and *Thielemann*."  *Id*.  Thus, this factor favors Albertson.

However, Albertson's relatively short incarceration sentence suggests that the length of the supervised release term is reasonable.  Though we do not set a bright-line rule, we find no fault with Albertson's sentence having a lengthy

---

[7]  It is longer than those imposed in *Thielemann*, *Freeman*, *Crandon*, and *Maurer*.  These defendants received supervised release terms of ten, five, three, and five years, respectively.

[8]*See* U.S. Nat'l Cntr. for Health Stat., *Expectation of Life and Expected Deaths by Race, Sex, and Age: 2006*, tbl. 105, *available                                                                   at* http://www.census.gov/compendia/statab/2010/tables/10s0105.pdf.  According to that chart, Albertson's life expectancy is 78 and Miller's 80.

"tail"—that is, his term of supervised release comprises 80% of the total 25-year period of restriction on his liberty.

With these factors in context, we approve the 20-year term of supervised release in itself, but the internet restriction condition fails for overbreadth because it is too restrictive. If the District Court had a reason for imposing the type of internet restriction that we have typically reserved for offenders such as those in *Crandon* and *Thielemann*, it failed to state that reason. Accordingly, we can do little more than "flounder in the zone of speculation." *United States v. Loy*, 191 F.3d 360, 371 (3d Cir. 1999) (internal quotation marks and citation omitted). Thus we remand.

In contrast to the internet use restriction, Albertson's computer monitoring condition—which requires him to submit his computer to inspections, and allow installation of monitoring or filtering software—would be generally acceptable if the internet restriction to which it applies is narrowly tailored and reasonable. Moreover, the condition's requirement that Albertson submit to initial and subsequent computer "examinations" finds statutory support in 18 U.S.C.

16

§ 3583(d)(3).[9]   Hence the inspections, coupled with the required installation of monitoring or filtering software, are reasonable methods of enforcing a more targeted internet restriction.   For these reasons, we discern no fault with similar monitoring conditions (that allow computer inspections and the installation of monitoring or filtering software) paired with a more tailored internet restriction.

---

[9] It provides:

> The court may order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

This language bears more so on Special Condition 6—which requires Albertson to submit to searches of his computer upon reasonable suspicion—that he does not challenge.  However, we believe that it also supports the propriety of the monitoring condition, which is similar. *See Miller*, 594 F.3d at 188 n.10 (discussing the interplay of the two types of special conditions).

To sum up, in a time where the daily necessities of life and work demand not only internet access but internet fluency, sentencing courts need to select the least restrictive alternative for achieving their sentencing purposes.  In this case, the District Court may achieve that purpose through an internet prohibition and monitoring requirement to assure that Albertson does not engage in offensive conduct.[10]  We thus vacate both conditions and remand for that Court to fashion a "comprehensive, reasonably tailored scheme."  *Miller*, 594 F.3d at 188.[11]

---

[10] In *Freeman*, we suggested that a ban on porn sites and images might be appropriate instead.  316 F.3d at 392.  We also note that "a prohibition on joining social networks frequented by children would serve to guard against recidivism without unjustly constraining [Albertson's] liberty interests."  Case Note, *Criminal Law—Supervised Release—Third Circuit Approves Decade-Long Internet Ban for Sex Offender.—United States v. Thielemann*, 575 F.3d 265 (3d Cir. 2009), 123 Harv. L. Rev. 776, 783 (2010).

[11]  We ask the District Court to state the safety benefits that will inure to the public from the internet restriction given the First Amendment concerns at stake.  *See Loy*, 237 F.3d at 264 (noting that any ban must be directly related to the goals of protecting the public, deterrence, and rehabilitation, in addition to being narrowly tailored).

## B. The Associational Condition

Albertson claims there is no support in the record for imposing a prohibition on associating with minors under age 18 (except his family).  While it is true that "[a] district court must state the reasons in open court for imposing a particular special condition so that the appellate court is not left to speculate about the reasons," *Miller*, 594 F.3d at 184, (and that was not done here), we may "[n]evertheless . . . affirm the condition if our own review of the record reveals any viable basis for the restriction."  *Id.* at 189 (quoting *Voelker*, 489 F.3d at 144) (internal quotation marks omitted).  At the time of his sentencing, Albertson had been charged with, among other things, indecent assault of his then-13- or 14-year-old step-daughter, and has since been convicted of that crime.  There is thus ample support in the record for this condition.  Its propriety is further corroborated by our approval of a nearly identical condition in *Miller*.  594 F.3d at 190.  Though Albertson's condition does not explicitly allow for "casual encounters," as did the one in *Miller*, we conclude that such a proviso is implicit in the condition:  "At this point, it is well established that associational conditions do not extend to casual or chance meetings."  *Id.* at 191 n.11 (internal quotation marks and citation omitted).  Accordingly, we believe the association-with-minors condition is adequately supported by the record and consistent with the goals set forth in § 3553(a) as they are incorporated into § 3583(d).[12]

---

[12] Albertson also challenges the reasonableness of the 20-year term on the remaining conditions of his supervised release—both the general conditions and those special ones not dealt with above.  The appellant has the burden of demonstrating unreasonableness.  *United States v. Cooper*, 437 F.3d 324,

19

\* \* \* \* \*

We affirm the duration of the 20-year supervised release term and the challenged associational restriction. However, we vacate and remand for further proceedings on the internet restriction (Special Condition 5). We believe that a monitoring requirement is a reasonable means of enforcing a well-tailored internet restriction, but remand that condition (Special Condition 7) as well for any adjustments required in light of the re-fashioned internet restriction.

---

332 (3d Cir. 2006), *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007). For the rationale already noted as to the duration of the internet ban, Albertson has not met that burden.