**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1293-14T2

J.I.,

    Appellant,

v.

NEW JERSEY STATE PAROLE BOARD,

    Respondent.

_____

| APPROVED FOR PUBLICATION |
| --- |
| August 11, 2015 |
| APPELLATE DIVISION |

Argued telephonically April 15, 2015 —
Decided August 11, 2015

Before Judges Sabatino, Simonelli and
Guadagno.

On appeal from the New Jersey State Parole
Board.

Joseph S. Murphy argued the cause for
appellant (Murphy & Woyce, attorneys; Mr.
Murphy and Michael C. Woyce, on the briefs).

Christopher C. Josephson, Deputy Attorney
General, argued the cause for respondent (John
J. Hoffman, Acting Attorney General, attorney;
Lisa A. Puglisi, Assistant Attorney General,
of counsel; Mr. Josephson, on the brief).

The opinion of the court was delivered by

SIMONELLI, J.A.D.

Appellant J.I. is a convicted sex offender who is monitored

by respondent New Jersey State Parole Board (Board) as an

offender subject to community supervision for life (CSL), N.J.S.A. 2C:43-6.4.[1] J.I. challenges the constitutionality of conditions of his CSL sentence that prohibit him from using any device having Internet capabilities, accessing any social networking websites or the Internet, viewing or possessing pornography, and using, possessing and purchasing alcohol. J.I. also challenges the Board's denial of his request for a hearing. For the reasons that follow, we reject J.I.'s challenges and affirm.

I.

We begin our analysis with a review of the pertinent authority and factual background. "CSL is a component of the Violent Predator Incapacitation Act, which is also a component of a series of laws, enacted in 1994, commonly referred to as 'Megan's Law.'" State v. Perez, 220 N.J. 423, 436-37 (2015). CSL is a special sentence imposed on sex offenders "to protect the public from recidivism by sexual offenders." Id. at 437. Accordingly, offenders sentenced to CSL are supervised by the Division of Parole as if on parole and may be subject to

---

[1] In 2003, the Legislature amended N.J.S.A. 2C:43-6.4 to change CSL to parole supervision for life (PSL), effective January 14, 2004. L. 2003, c. 267, § 1. Because J.I. was convicted of sexual offenses prior to January 14, 2004, he was sentenced to CSL. See N.J.A.C. 10A:71-6.11(a).

"conditions appropriate to protect the public and foster rehabilitation," N.J.S.A. 2C:43-6.4, and special conditions deemed reasonable by the Board "in order to reduce the likelihood of recurrence of criminal or delinquent behavior, including a requirement that the parolee comply with the Internet access conditions set forth in [N.J.S.A. 30:4-123.59(b)(2)]." N.J.S.A. 30:4-123.59(b); see also N.J.A.C. 10A:71-6.4 and -6.11(b). In addition, the District Parole Supervisor (DPS) may impose special conditions if he or she determines that "such conditions would reduce the likelihood of recurrence of criminal behavior." N.J.A.C. 10A:71-6.11(k); see also N.J.S.A. 30:4-123.59(b). If an offender violates a condition, he or she may be subject to the imposition of additional special conditions. N.J.S.A. 30:4-123.60(a) and -123.61(b). There should be "a reasonable relationship between the special condition and the prior criminal acts of the particular parolee." Pazden v. N.J. State Parole Bd., 374 N.J. Super. 356, 367 (App. Div. 2005).

An offender is entitled to constitutional due process protections of notice and an opportunity to object to the conditions. J.B. v. N.J. State Parole Bd., 433 N.J. Super. 327, 338 (App. Div. 2013), certif. denied sub nom, B.M. v. N.J. State Parole Bd., 217 N.J. 296 (2014). However, the offender's

special status "[does] not entitle him to the 'full panoply of rights' available to a citizen in a criminal trial." Ibid. (quoting Jamgochian v. N.J. State Parole Bd., 196 N.J. 222, 242 (2008)). The offender "[is] nonetheless constitutionally protected from 'arbitrary government action.'" Ibid. (quoting Jamgochian, supra, 196 N.J. at 241-42). As we have held,

> in this context, due process and procedural fairness must be applied flexibly, for the Constitution does not mandate a regime that will make it impractical to impose a necessary . . . provision to protect the public or rehabilitate the offender. Moreover, [d]iscretion must be invested in the Parole Board, which has the agency expertise and authority to implement a scheme that can address the unique circumstances of each case.
>
> [Ibid. (alteration in original) (quoting Jamgochian, supra, 196 N.J. at 246, 250) (internal quotation marks omitted).]

We have recognized that convicted sex offenders are "generally subject to a constitutionally-permissible degree of continued governmental oversight and diminished personal autonomy when they are on parole or some other form of post-release supervision." Id. at 337. Subject to certain "recognized limitations," which include an offender's right to procedural fairness, freedom of speech, and freedom of association, "the State has a strong interest in assuring that parolees adhere to the conditions of their parole." Id. at 337-

Thus, constitutional challenges to conditions of a CSL sentence "must be examined in the context of [the challengers'] distinctive status as sex offenders who have been released into the community after serving their custodial sentences, and who are now under the Parole Board's continued supervision through CSL[.]" Id. at 336.

There are statutory and regulatory mechanisms that permit an offender to obtain modification or removal of a condition. See N.J.S.A. 30:4-123.59(c) (permitting the Board panel to relieve an offender of a parole condition); N.J.S.A. 30:4-123.61(c) (permitting an offender to apply to the Board's designated representative for modification of the conditions of parole); N.J.A.C. 10A:71-6.6 (permitting the Board panel or Board to modify or vacate a condition of parole); and N.J.A.C. 10A:71-6.11(b)(22) (permitting an offender serving a CSL sentence to apply to the DPS to modify the condition prohibiting use of a computer and/or device with Internet capabilities to access social networking websites). A modification or removal of a condition must be consistent with the offender's rehabilitative efforts. See Pazden, supra, 374 N.J. Super. at 366-67.

The record in this case reveals that in October 2003, J.I. was convicted on one count of second-degree sexual assault,

N.J.S.A. 2C:14-2(b), and two counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). The charges stemmed from his repeated sexual molestation of his daughters, who were between the ages of six and fourteen. The trial court imposed a seven-year term of imprisonment with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. The court determined that J.I.'s conduct was characterized by a pattern of repetitive and compulsive behavior and recommended that he be committed to the Adult Diagnostic and Treatment Center (ADTC) in Avenel. The court also ordered J.I. to comply with the post-release requirements of Megan's Law, N.J.S.A. 2C:7-1 to -23, imposed a three-year term of mandatory parole supervision (MPS) to commence upon his release from imprisonment, and imposed a special sentence of CSL to commence upon his release from MPS.

In November 2007, the Board decided to impose a general condition on all sex offenders under supervised release that prohibited them from engaging in social networking on the Internet. Thereafter, in December 2007, the Legislature amended N.J.S.A. 2C:43-6.4, effective February 25, 2008, to add a provision permitting the Board to impose a special condition on offenders serving a CSL sentence prohibiting them

> from accessing or using a computer or any
> other device with Internet capability

> without the prior written approval of the
> court except the person may use a computer
> or any other device with Internet capability
> in connection with that person's employment
> or search for employment with the prior
> approval of the person's parole officer[.]
>
> [N.J.S.A. 2C:43-6.4(f); see also L. 2007, c.
> 219, § 3.]

The statute specifies other special computer conditions, including requiring the offender to submit to periodic unannounced examinations of his or her computer, install a monitoring device on his or her computer, and disclose all passwords. N.J.S.A. 2C:43-6.4(f)(1)-(5).

In October 2009, J.I. was released from the ADTC, commenced serving his MPS, and received notice that he could not engage in social networking on the Internet. Three months later, on January 7, 2010, J.I.'s parole officer visited his home, searched his computer, and found that he had visited multiple pornography and nudism Internet websites that depicted minor females in the nude. The parole officer also found alcohol and several "barely legal" DVDs, and a book depicting nude pre-teen and underage teen females. J.I. admitted that he had been searching the Internet for pictures, videos, and books showing nude minor females between ten and twelve years of age.

J.I.'s sex offender treatment provider determined that the discovered items were not conducive to J.I.'s rehabilitation and

reintegration into society. As a result, in March 2010, the DPS imposed the following special conditions:

1.  [J.I.] is to refrain from the possession and/or utilization of any computer and/or device that permits access to the Internet unless specifically authorized by the [DPS] and that if the DPS permits the use of a computer and/or device that is capable of accessing [the Internet] that [J.I.] is subject to certain conditions, including that [J.I.] is to refrain from accessing the Internet from any computer and/or device at any time or for any reason [(the computer/Internet special condition)];

2.  [J.I.] is to refrain from viewing or possessing a picture, photograph, negative film, movie, videotape, DVD, CD, CD-ROM, streaming video, computer generated or virtual image or other representation, publication, sound recording or live performance that is predominantly oriented to descriptions or depictions of sexual activity [(the pornography special condition)]; and

3.  [J.I.] is to refrain from the use, possession and purchase of alcohol; [J.I.] is to refrain from frequenting establishments whose primary purpose is the sale of alcohol (i.e., bars and liquor stores); and [J.I.] is to participate in random alcohol monitoring acceptable to the District Parole Office until discharged [(the alcohol special condition)].

The Board panel affirmed these special conditions.

In September 2010, the Board adopted a new regulation, N.J.A.C. 10A:71-6.11(b)(22), effective December 6, 2010, which

added a general condition prohibiting all offenders serving a CSL sentence "from using any computer and/or device to create any social networking profile or to access any social networking service or chat room in the offender's name or any other name for any reason unless expressly authorized by the [DPS]" (the social networking condition).[2]  See also 42 N.J.R. 2960(a) (Dec. 6, 2010).  The new regulation permitted an offender to apply to the DPS to modify this condition.  N.J.A.C. 10A:71-6.6; see also N.J.A.C. 10A:71-6.11(b)(22).

In October 2010, while he was still on MPS, J.I. was found to be in possession of a cellular phone with Internet capabilities and found to have accessed a social networking website without the DPS's permission.  These violations, along with J.I.'s prior admission to accessing the Internet to view nude photographs of minor females, resulted in a revocation of his MPS and referral to the ADTC for a psychological evaluation. After reviewing the results of the psychological evaluation, the Board panel imposed a twelve-month future eligibility term (FET) for J.I.'s MPS.

In October 2012, J.I. was released from MPS and commenced serving his CSL sentence.  Prior thereto, he received a written

---

[2]   A 2012 amendment to N.J.A.C. 10A:71-6.11(b)(22) provided certain definitions, including the definition of "social networking service." See 44 N.J.R. 30(a) (Jan. 3, 2012).

notice of general and special CSL conditions, which included the social networking condition, and his parole officer orally advised him that he was subject to the computer/Internet special condition. J.I. later acknowledged receipt of the written computer/Internet, pornography and alcohol special conditions.

J.I. asked the DPS for permission to use a computer to access social networking websites for employment and work purposes. The DPS granted the request and modified the social networking condition and computer/Internet special condition to permit J.I. to use a computer and access social networking websites for employment and work purposes only, subject to J.I. installing monitoring software. The DPS declined to permit J.I. to access any non-employment/work-related social networking websites, citing the Board panel's April 2010 affirmance of the computer/Internet special condition imposed during J.I.'s MPS term and the fact that J.I. viewed pornographic material on the Internet and possessed alcohol, which were found to be non-conducive to his rehabilitation and reintegration into society. The DPS determined that the computer/Internet, pornography and alcohol special conditions would reduce the likelihood of J.I.'s recidivism and therefore protect the public safety and welfare. The Board panel affirmed the special conditions.

A-1293-14T2

Less than two months after receiving the modified conditions, J.I. violated them by accessing non-employment/work-related websites. Despite repeated warnings and admonitions from the DPS, J.I. violated the modified conditions on three separate occasions. After the fourth violation, the DPS revoked the modified conditions and prohibited J.I. from using any device having Internet capabilities and accessing any social networking websites and the Internet.

J.I. ultimately appealed to the Board. In an October 29, 2014 written decision, the Board made detailed factual findings and concluded that the social networking condition and the computer/Internet, pornography and alcohol special conditions were consistent with protecting the public and fostering J.I.'s rehabilitation. Specifically, the Board found as follows:

> [J.I.'s] commitment [of the] offenses . . . involved him sexually molesting his . . . daughters; that [J.I.] was determined to be a repetitive and compulsive sex offender; and that just after three months of serving a lengthy sentence in the [ADTC] [J.I.] was found to be in possession of multiple "barely legal" DVDs and a book depicting pre-teen and underage teen females in the nude, as well as alcohol; that a search of [J.I.'s] computer revealed he had been visiting multiple pornography and nudism sites on the Internet, which depicted minors in the nude; and that [J.I.] admitted in a voluntary statement that he was searching the Internet to find nude pictures, videos and books of minor females between the ages of ten . . . and twelve[.]

The Board also found that the revocation of J.I.'s MPS for violating the social networking condition and computer/Internet special condition, and his admission to searching the Internet for nude pictures, videos and books of minor females between the ages of ten and twelve, were "both serious and concerning in light of the circumstances of his commitment offense."

The Board noted that the DPS granted J.I.'s request to modify the social networking condition and computer/Internet special condition to permit J.I. to use a computer and access the Internet and social networking websites for employment/work-related purposes, but revoked them because J.I. violated them on four separate occasions. Thus, the Board concluded that J.I.'s "failure to comply with the privilege of being permitted to utilize the Internet only for employment/work purposes and his willful disregard to limit his Internet use solely for employment/work purposes despite being warned and admonished on multiple occasions is both serious and concerning." Accordingly, the Board upheld the revocation of the modified conditions and the prohibition on J.I.'s use of a device having Internet capabilities and accessing social networking websites and the Internet. The Board permitted J.I. to regain access in the future if his rehabilitation improved.

A-1293-14T2

The Board rejected J.I.'s argument that the social networking condition and computer/Internet special condition were too restrictive, noting there was a mechanism for him to request permission to use a computer and access the Internet and social networking websites. The Board stated,

> the Division of Parole requires [J.I.] to provide the nature and purpose of each request for computer/Internet use or social networking. Such a process allows the Division of Parole to review each request on a case-by-case basis and to review the supporting documentation submitted to determine whether the request is consistent with [J.I.'s] rehabilitative efforts. Therefore, the Board finds [J.I.'s] contentions to be without merit and advises that such requests for approval to engage in computer/Internet or social networking usage should be directed by [J.I.] to the Division of Parole in order for the Division . . . to determine whether the request is consistent with [J.I.'s] rehabilitative efforts.

The Board also rejected J.I.'s request for a hearing, finding that pursuant to Jamgochian, supra, the conditions did not constitute an infringement on his liberty interest that would warrant a hearing.

## II.

On appeal, J.I. contends that N.J.A.C. 10A:71-6.11(b)(22), the social networking condition, is unconstitutional on its face. He argues that the absolute ban on using any device with Internet capabilities and on accessing any social networking

websites and the Internet for an offender who never committed an Internet-related offense is overbroad and violates his right to due process and to freedom of speech and association under the First Amendment.[3]

We rejected similar facial challenges in J.B., supra, where two appellants challenged the social networking restriction. 433 N.J. Super. at 335. In J.B., we analyzed both N.J.A.C. 10A:71-6.11(b)(22), which the Board imposes on all offenders, and the computer/Internet restrictions in N.J.S.A. 2C:43-6.4(f), which the Board may impose on an offender, and determined that

> [t]he manifest objective of the Internet restrictions in the authorizing statute and the Parole Board's regulations is not to eliminate the ability of released offenders on PSL or CSL to access the Internet in its entirety. Instead, the provisions are legitimately aimed at restricting such offenders from participating in unwholesome interactive discussions on the Internet with children or strangers who might fall prey to their potential recidivist behavior.
>
> [Id. at 341.]

Moreover, after evaluating comparable Internet restrictions in other jurisdictions, we found that "the Internet restrictions adopted here by the Parole Board have been constitutionally tailored to attempt to strike a fair balance" and "are

---

[3] U.S. Const. amend. I.

reasonably crafted on their face to promote important State interests." Id. at 344-46. Therefore, we held that N.J.A.C. 10A:71-6.11(b)(22) and N.J.S.A. 2C:43-6.4(f) were facially valid under the First Amendment, the Due Process Clause, and the New Jersey Constitution, "subject to the right of appellants or other offenders who are subject to a CSL . . . condition to pursue permission from a parole official to gain access to a specified website for a benign purpose." Id. at 344, 346. We declined to presume, in the abstract, that the Board or an individual DPS would respond to an offender's request for a modification "rigidly or unfairly." Id. at 344. Thus, we concluded that "this procedural avenue should be exhausted first, subject to the right of an offender to bring a future as-applied constitutional challenge if necessary." Ibid.

J.I. argues that J.B. does not apply because it only involved a ban on access to social networking websites not, as here, an absolute ban from using any Internet-capable device and accessing any social networking websites or the Internet imposed on offenders, like him, whose crimes were not Internet-related.[4]

---

[4] Relying on United States v. Albertson, 645 F.3d 191 (3d Cir.), cert. denied, ___ U.S. ___, 131 S. Ct. 3045, 180 L. Ed. 2d 862 (2011), United States v. Heckman, 592 F.3d 400 (3d Cir. 2010), and United States v. Voelker, 489 F.3d 139 (3d Cir. 2007), J.I. argues that the absolute ban is unconstitutional. Rulings by federal circuit courts of appeals are not binding upon us.
(continued)

We disagree with this argument.  First, the two appellants in J.B. who challenged the social networking condition were not convicted of Internet-related crimes and we upheld the condition as to them nonetheless.  Id. at 331, 333, 335-36.  Second, although those two appellants only challenged the social networking condition, see id. at 332, 334, we analyzed the computer and Internet restrictions in N.J.S.A. 2C:43-6.4(f) as well and upheld the facial validity of both provisions.  Id. at 341, 344-46.  Thus, our affirmance of the Internet-access restrictions should not be narrowly construed as to only apply to the social networking restriction.  Accordingly, we reject J.I.'s facial challenges to N.J.A.C. 10A:71-6.11(b)(22) and confirm our decision in J.B. that both the regulation and N.J.S.A. 2C:43-6.4(f) are constitutionally valid on their face. We make clear that our holding here applies to all offenders serving a CSL sentence, regardless of the nature of their crimes.

---

(continued)
Young v. Prudential Ins. Co. of Am., 297 N.J. Super. 605, 622 (App. Div.), certif. denied, 149 N.J. 408 (1997).  In any event, the cases do not apply, as they were not decided on constitutional grounds, but rather, on federal statutory grounds not raised here, and do not involve a sex offender, such as J.I., who viewed pornography on the Internet while on parole. See Albertson, supra, 645 F.3d at 194, 197; Heckman, supra, 592 F.3d at 404, 409; Voelker, supra, 489 F.3d at 143-44.

Nonetheless, an offender is entitled to constitutional due process protections of notice and an opportunity to object to the conditions and request broader Internet access. Id. at 338. Here, J.I. received notice of the social networking condition and computer/Internet special condition. He requested, and was granted, modifications to use an Internet-capable device and access social networking websites for employment/work-related purposes. He challenged the conditions and revocation of the modified conditions in his various administrative appeals. The Board also afforded him the opportunity to regain Internet access in the future if he could show such access is consistent with his rehabilitative efforts. Based on the record, we are satisfied there was no due process violation in this case.

### III.

J.I. also raises as-applied challenges to N.J.A.C. 10A:71-6.11(b)(22). He argues that the 2010 amendment to the regulation violates the Ex Post Facto Clause because the amendment was enacted after the trial court imposed his CSL sentence. This contention lacks merit.

The Ex Post Facto Clause of the United States Constitution prohibits "any statute which punishes . . . an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission,

A-1293-14T2

or which deprives one charged with crime of any defense available . . . at the time when the act was committed[.]" Beazell v. Ohio, 269 U.S. 167, 169, 46 S. Ct. 68, 68, 70 L. Ed. 216, 217 (1925). The Ex Post Facto Clause is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504, 115 S. Ct. 1597, 1601, 131 L. Ed. 2d 588, 594 (1995) (quoting Collins v. Youngblood, 497 U.S. 37, 43, 110 S. Ct. 2715, 2719, 111 L. Ed. 2d 30, 39 (1990)). To constitute an ex post facto penal law, a change in the law "'must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.'" State v. Natale, 184 N.J. 458, 491 (2005) (quoting Weaver v. Graham, 450 U.S. 24, 29, 101 S. Ct. 960, 964, 67 L. Ed. 2d 17, 23 (1981)). "There is 'no ex post facto violation . . . if the change in the law is merely procedural and does not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt.'" Ibid. (quoting Miller v. Florida, 482 U.S. 423, 433, 107 S. Ct. 2446, 2452-53, 96 L. Ed. 2d 351, 362 (1987)) (internal quotation marks omitted). "New Jersey's ex post facto jurisprudence follows the federal jurisprudence." Perez, supra, 220 N.J. at 439.

In *Perez*, the Court noted that the 2003 amendment to *N.J.S.A.* 2C:43-6.4 changed CSL to PSL and increased the punishment for a CSL offender who commits a sex offense while serving a CSL sentence by eliminating the possibility of parole and requiring him or her to serve a mandatory extended term with no parole eligibility. *Id.* at 437-38. The Court considered whether the amendment could be retroactively applied to such an offender. *Id.* at 436-38. The Court found that resolution of this issue "turn[ed] on whether the . . . amendment [made] more burdensome the punishment of a crime after its commission. [This] inquiry turn[ed] on whether the special sentencing condition of CSL [was] considered penal or remedial." *Id.* at 440.

In making this inquiry, the Court noted its holding in *Doe v. Poritz*, 142 *N.J.* 1 (1995), that the imposition of the post-release registration and notification requirements of Megan's Law did not constitute punishment and, therefore, did not violate ex post facto prohibitions. *Ibid.* In contrast, in *State v. Schubert*, 212 *N.J.* 295 (2012), the Court recognized "the punitive nature of CSL" and "determined that a trial court could not modify a previously imposed sentence to include CSL once the defendant had completed his sentence." *Perez*, *supra*, 220 *N.J.* at 440.

As the defendant in <u>Perez</u> was already sentenced to CSL at the time <u>N.J.S.A.</u> 2C:43-6.4 was amended, <u>id.</u> at 436, the Court considered whether the change to his CSL sentence "enhance[d] the punitive consequences of the special sentence of CSL to his detriment" so as to "violate[] the federal and state prohibition of ex post facto legislation." <u>Id.</u> at 442. Ultimately, because application of the amendment would have required the defendant "to spend many additional years in prison," the Court concluded it was punitive and, thus, violated the Ex Post Facto Clause. <u>Ibid.</u>

Here, at the time <u>N.J.A.C.</u> 10A:71-6.11(b)(22) was enacted, J.I. was not serving his CSL sentence and was not subject to any CSL conditions. In fact, no CSL conditions could have been imposed until J.I.'s CSL sentence commenced in 2012. <u>See</u> <u>N.J.A.C.</u> 10A:71-6.11(b) (providing that the special sentence of CSL commences upon completion of the offender's sentence). Thus, the amendment raised no ex post facto concerns because it did not change the conditions of J.I.'s CSL sentence. More importantly, the amendment is remedial in purpose and effect, not punitive. It is aimed at protecting the public from sex offenders, fostering rehabilitation, and reducing the likelihood of recidivism. The amendment, therefore, poses no ex post facto concerns. <u>See</u> <u>Poritz</u>, <u>supra</u>, 142 <u>N.J.</u> at 43-44.

A-1293-14T2

The non-punitive nature of the amendment is clear in this case. The Board's purpose in imposing the social networking condition was to protect society from a person who sexually molested his own children and to facilitate J.I.'s rehabilitation and reintegration into society, not to punish him. It is for this latter reason that the Board permitted J.I. to continue to seek to modify or remove the condition, and such future requests would be evaluated in light of whether they are consistent with his rehabilitative efforts. We, therefore, conclude that N.J.A.C. 10A:71-6.11(b)(22) does not violate the Ex Post Facto Clause.

## IV.

J.I. contends that the Board's decision to uphold all of the conditions was arbitrary, capricious and unreasonable. He argues there was no reasonable basis for the absolute ban on his use of an Internet-capable device or access to any social networking website and the Internet, and the pornography and alcohol special conditions are unrelated to his rehabilitation or public safety and welfare. We disagree.

Our review of the Board's decisions is limited. Hare v. N.J. State Parole Bd., 368 N.J. Super. 175, 179 (App. Div.), certif. denied, 180 N.J. 452 (2004). "Parole Board decisions are highly individualized discretionary appraisals, and should

21

only be reversed if found to be arbitrary or capricious." Id. at 179-80 (citations and internal quotation marks omitted). As directed by our Supreme Court, our task is to determine

> (1) whether the agency's action violates express or implied legislative policy, i.e., did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Trantino v. N.J. State Parole Bd., 166 N.J. 113, 172 (2001).]

Thus, where the Board has applied the correct legal standard, our role is limited to determining whether the decision was arbitrary, capricious or unreasonable. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002). We "must determine whether the factual finding could reasonably have been reached on sufficient credible evidence in the whole record." Hare, supra, 368 N.J. Super. at 179. In making this determination, we "may not substitute [our] judgment for that of the agency, and an agency's exercise of its statutorily-delegated responsibilities is accorded a strong presumption of reasonableness." McGowan, supra, 347 N.J. Super. at 563 (citation omitted). Accordingly, "[t]he burden of showing that

an action was arbitrary, unreasonable or capricious rests upon the appellant." Ibid.

Applying these standards, we discern no reason to disturb the Board's decision. J.I. repeatedly sexually assaulted his minor daughters for many years and the court deemed him a repetitive and compulsive sex offender. Despite serving a lengthy sentence at the ADTC, less than three months after his release, and knowing he was subject to the social networking condition, J.I. accessed multiple pornography sites to view minor females in the nude. He also possessed DVDs and a book depicting nude pre-teen and underage teen females and possessed alcohol. The computer/Internet, pornography and alcohol special conditions were imposed as a result of a determination by J.I.'s sex offender treatment providers that the discovered items were not conducive to his rehabilitation and reintegration into society. Thus, there was a reasonable relationship between the special conditions and J.I.'s prior criminal acts, and the conditions were reasonable in order to reduce the likelihood of his recidivism and consistent with protecting the public safety and welfare and fostering his rehabilitation.

In addition, J.I.'s post-release conduct and repeated violations of the modified social networking condition and computer/Internet special condition indicate he has not

rehabilitated and continues to pose a risk to public safety and welfare. We conclude that the record more than amply supports the Board's decision to uphold the ban on J.I.'s use of an Internet-capable device and access to the Internet and the decision is not arbitrary, capricious or unreasonable.

V.

J.I. contends that the Board violated his right to due process by denying him discovery and a hearing. We have considered this contention in light of the record and applicable legal principles and conclude it is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). A convicted sex offender is entitled to constitutional due process protections of notice and an opportunity to object to the conditions and request broader Internet access, J.B., supra, 433 N.J. Super. at 338, not the full panoply of rights available to a citizen in a criminal trial. Jamgochian, supra, 196 N.J. at 242. J.I. received all the due process to which he was entitled.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION