**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5537-16T4

THOMAS MUSTO,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

Submitted November 27, 2018 – Decided April 1, 2019

Before Judges Rothstadt and Gilson.

On appeal from the New Jersey State Parole Board.

Thomas Musto, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Erica R. Heyer, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Thomas Musto is a seventy-four year old New Jersey inmate, currently incarcerated in another state under the Interstate Corrections Compact.[1] He is serving a term of life imprisonment for a 1984 murder and the possession of a weapon without a permit for which he was sentenced in 1986. His sentence was subject to a thirty-year period of parole ineligibility.

As his first parole eligibility date approached, a two-member panel (Board Panel) of respondent New Jersey State Parole Board (Board) denied his application for parole and referred his matter to a three-member panel that imposed a 120-month future eligibility term (FET), which the Board reviewed and adopted. He now appeals from the Board's May 31, 2017 final agency decision denying him parole and imposing the 120-month FET. We affirm.

In 1984, appellant became a suspect in a police investigation into the death of a shooting victim whose body had been discovered behind a supermarket. According to police, appellant identified another individual as the perpetrator, but further investigation led police to conclude that the individual was not the

---

[1] "The . . . compact, . . . as codified in this state, empowers New Jersey to enter into contracts with other states 'for the confinement of inmates on behalf of a sending state in institutions situated within receiving states.' . . . The purpose of the ICC is to provide more extensive options for the treatment and rehabilitation of various offenders than may be available within each individual state." Van Winkle v. N.J. Dep't of Corr., 370 N.J. Super. 40, 45 (App. Div. 2004) (citations omitted).

shooter and to the discovery of the murder weapon in appellant's possession. Appellant was subsequently arrested and charged in an indictment with murder and possession of a weapon without a permit. After a twenty-one day trial, a jury convicted appellant of both offenses. After his conviction, appellant still maintained the other individual shot the victim. On November 7, 1986, the trial court imposed its sentence.

At the time of his arrest, appellant had one prior conviction for a 1982 invasion of privacy for which he was sentenced to a suspended sentence and probation. After his conviction for murder, and prior to being considered for parole by the Board Panel, appellant had committed five disciplinary infractions while incarcerated, including attempted escape and misuse of authorized medications, both "asterisk offenses," which under State regulations are "considered the most serious and result in the most severe sanctions." N.J.A.C. 10A:4-4.1. His last infraction occurred in 2000.

As appellant's initial parole eligibility date of August 20, 2016, became imminent, his application for parole was first heard by a hearing officer on May 3, 2016. After considering the matter, the hearing officer referred appellant's case to the Board Panel.

The Board Panel denied parole on June 9, 2016, and referred the establishment of an FET to a three-member panel. According to the Board Panel, its decision was based upon, among other factors, the seriousness of appellant's criminal offense; his prior record, which had become more serious over time; his institutional offenses; his earlier failure to successfully complete probation he received after committing his prior offense; and his "insufficient problem resolution" characteristics that included "a lack of insight into [his] criminal behavior." Notably, the Board Panel found that appellant told a "very different [version of his offense] than the official version [stating that] it was an accidental shooting," which led the Board Panel to conclude that appellant "needs to address his criminal thinking and be more forthcoming about his crime."

In reaching its decision, the Board Panel considered various mitigating factors that weighed in favor of parole. They included reports of appellant's successful engagement and participation in institutional programs, his minimal number of infractions over the years, and a favorable risk assessment report, as well as appellant's being placed on "minimum custody status."

After the Board Panel's decision and its referral, the three-member panel then established a 120-month FET, which was outside the administrative

guidelines. The three-member panel issued a written explanation for its decision, which involved consideration of the same factors as the Board Panel, including mitigating factors. The three-member panel elaborated on the Board Panel's concern about appellant not coming to terms with his criminal behavior. It stated that because appellant described his victim's killing as an accident, the Board Panel could not enter into a "dialogue" with appellant about "what [his] mind[]set was at the time of [the] Murder offense, what [he] ha[s] come to understand about [him]self as to why [he] chose to take [the] victim's life in such an extreme manner and how it can be determined that such behavior . . . would not occur again if [he] were released at this time."

Appellant appealed both panels' decisions to the full Board. On May 31, 2017, the Board affirmed the denial of parole and the imposition of a 120-month FET. The Board explained its ruling in a written decision in which it relied upon the same factors considered by its panels, including the mitigating factors. In its decision, the Board noted that in accordance with the ICC, it considered an April 27, 2016 risk assessment and "[a] complete report on [appellant's] social, physical, and mental condition and reports of [his] institutional housing, work, education and program participation" that was provided by the "Department of

Corrections" of the state where he is incarcerated.  Appellant now appeals from the Board's final agency decision.

In his appeal to us, appellant contends:

POINT ONE

BOARD PANEL FINDING THAT APPELLANT POSSESSES A SUBSTANTIAL LIKELIHOOD TO COMMIT ANOTHER CRIME IF RELEASED UPON PAROLE IS NOT SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE.
(Raised Below)

POINT TWO

BOARD PANEL DECISION TO DENY PAROLE IS NOT BASED UPON PAROLE STATUTES AND ADMINISTRATIVE REGULATIONS WHICH INFRINGED UPON APPELLANTS CONSTITUTIONAL RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION AMENDMENT FOURTEEN.
(Raised Below: Parole Act of 1979, U.S. CONST. 14th Amend.)

POINT THREE

THE NEW JERSEY STATE PAROLE BOARD ACTED ARBITRARILY AND CAPRICIOUSLY WHEN IT IMPOSED A ONE-HUNDRED AND TWENTY MONTH (120) FUTURE ELIGIBILITY TERM (FET) ON APPELLANT RELYING UPON SUBSTANTIALLY THE SAME CONSIDERATION IT HAD RELIED UPON TO DENY APPELLANT PAROLE.
(Raised Below)

A-5537-16T4

POINT FOUR

THE BOARD PANEL FAILED TO COMPLY WITH THE FOLLOWING STATUTES N.J.S.A. 30:123.54 a, b (1) AND PROVIDE APPELLANT WITH A COMPLETE PSYCHOLOGICAL EVALUATION ALSO AS PER N.J.S.A. 30:4-123.52 (e) A RISK ASSESSMENT AND N.J.A.C. 10A:71-3.7 (a) (f) (h) (j) (k) AND ASSEMBLY LAW AND PUBLIC SAFETY COMMITTEE STATEMENT ASSEMBLY No. 23-L-1997, c. 217.
(Raised below: N.J.S.A. 30:4-123.52 (e)

We accord considerable deference to the Board and its expertise in parole matters. Our standard of review is whether the Board's decision was arbitrary and capricious. Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222-23 (2016). Parole Board decisions are "highly 'individualized discretionary appraisals.'" Trantino v. N.J. State Parole Bd., 166 N.J. 113, 173 (2001) (quoting Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 359 (1973)). We will not disturb the Board's fact-findings if they "could reasonably have been reached on sufficient credible evidence in the whole record." J.I. v. N.J. State Parole Bd., 441 N.J. Super. 564, 583 (App. Div. 2015) (quoting Hare v. N.J. State Parole Bd., 368 N.J. Super. 175, 179 (App. Div. 2004)). The burden is on the challenging party to demonstrate that the Board's actions were arbitrary, capricious or unreasonable. Bowden v. Bayside State Prison, 268 N.J. Super. 301, 304 (App. Div. 1993).

A Board's decision to grant or deny parole for crimes committed before August 1997 turns on whether there is a "substantial likelihood" that the inmate will commit another crime if released. N.J.S.A. 30:4-123.53(a) (1979), amended by L. 1997, c. 213, § 1; N.J.S.A. 30:4-123.56(c) (1979), amended by L. 1997, c. 213, § 2; Williams v. N.J. State Parole Bd., 336 N.J. Super. 1, 7 (App. Div. 2000); N.J.A.C. 10A:71-3.10(a). The Board must consider the enumerated factors in N.J.A.C. 10A:71-3.11(b)(1)-(23) in making its decision. The Board, however, is not required to consider each and every factor; rather, it should consider those applicable to each case. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 561 (App. Div. 2002).

With these guiding principles in mind, we turn to appellant's contentions on appeal. He asserts that his success in institutional programs, as well as being infraction free for many years, undermines the Board's determination that there is a substantial likelihood he will reoffend if released. He also relies upon what he describes as his acceptance of his involvement in the death of his victim, although he only admitted to the Board Panel that he "accidentally discharge[ed]" his weapon, causing the victim's death. Appellant attributes issues he had recalling events relating to his crime to his post-traumatic stress disorder, which he states he suffers from due to his service in the military.

Having reviewed the record, including the material in the confidential appendices, in light of our well-established standards, we affirm the Board's denial of parole. Appellant's parole eligibility was evaluated by the Board. The Board considered the relevant factors enumerated in N.J.A.C. 10A:71-3.11(b) and adopted the determinations made by the Board Panel, which found that there was a substantial likelihood that appellant would commit a new crime if released. We find nothing arbitrary or capricious about that decision because it is supported by sufficient credible evidence in the record.

We likewise are satisfied that the 120-month FET imposed by the Board is neither arbitrary nor capricious and, again, is supported by credible evidence in the record. Following the denial of parole, the Board must establish an FET. N.J.A.C. 10A:71-3.18(a)(2). When parole is denied for an inmate serving a life sentence, the standard eligibility term is twenty-seven months. N.J.A.C. 10A:71-3.21(a)(1). The Board, however, may exceed the FET guidelines if it determines that the presumption of twenty-seven months is "clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior." N.J.A.C. 10A:71-3.21(d).

Here, the Board adopted the determination of the Board Panel and three-member panel to establish a 120-month FET, relying upon the written decision

issued by the three-member panel. In its written decision, the Board detailed the particular reasons for establishing an FET outside the administrative guidelines and considered the relevant and applicable aggravating and mitigating factors. See N.J.A.C. 10A:71-3.21(d) (stating that the Board applies the factors enumerated in N.J.A.C. 10A:71-3.11 for FET determinations differing from the guidelines). The 120-month FET, while lengthy, will be substantially less than ten years because it will be reduced by applicable commutation, work, and custody credits. Again, we find nothing arbitrary or capricious about the decision because it is supported by sufficient credible evidence in the record.

To the extent we have not specifically addressed any of appellant's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5537-16T4